107 So.2d 885

**Christine B. KILGROW**

v.

**Jack M. KILGROW.**

3 Div. 812.

Supreme Court of Alabama.

Nov. 6, 1958.

Rehearing Denied Jan. 8, 1959.

**476**

Sol E. Brinsfield, Jr., Montgomery, for appellant.

Hill, Hill, Whiting, Harris & Pilcher, Montgomery, for appellee.

GOODWYN, Justice.

On August 29, 1957, Jack M. Kilgrow, appellee, filed a petition in the circuit court of Montgomery County, in equity, against his wife, Christine B. Kilgrow, seeking a temporary injunction restraining her from interfering with petitioner's "right to carry the said Margaret Kilgrow [alleged in the bill to be the parties' 7-year old daughter] to Loretta School next Tuesday to resume her education" and also seeking, upon final hearing of the cause, "a decree permanently enjoining the respondent from interfering or attempting to interfere and prevent the said Margaret Kilgrow from continuing her education at Loretta School." There is also a prayer for general relief.

The petition alleges that the parties are over 21 years of age, are bona fide residents of Montgomery, Alabama, and reside at 910 South Lawrence Street; that they were lawfully married in Montgomery County, Alabama, on May 19, 1948; that to this marriage was born one child, named Margaret Kilgrow, a girl now 7 years of age and who is residing with petitioner and respondent. The petition also contains the following allegations:

"3. During the 1956–57 school year, the said minor child of petitioner and respondent, Margaret Kilgrow, entered the first grade at Loretta School in Montgomery, Alabama, and continued throughout the school year. That the said Margaret Kilgrow made an excellent scholastic record at Loretta. That all her friends and playmates go to school at Loretta and that the said Margaret Kilgrow had a happy school year at Loretta and took an active part in all the school activities. That last spring at the end of the 1956–57 school year, she was enrolled in the Loretta School to begin the fall term of the 1957–58 school year to begin on Sep-

tember 3, 1957. That last week your petitioner carried his minor daughter, Margaret Kilgrow, to Loretta School to ascertain what books and supplies would be required at the beginning of the new school term beginning next week.

"4. That it would be to the best interest and welfare of the said Margaret Kilgrow that she return to Loretta School to resume her grade school education. That the respondent, Christine B. Kilgrow, mother of the said Margaret Kilgrow, is threatening to prevent petitioner from carrying his said minor daughter to Loretta and is threatening to interfere with the right of the petitioner to place his said minor daughter in Loretta School beginning Tuesday, September 3, 1957, and has told petitioner that she will remain away from her job for the purpose of preventing the said Margaret Kilgrow from returning to Loretta School next week. That the threats and avowed purpose of the said respondent to prevent the said minor child from returning to Loretta School is inimical to the welfare and best interest of the said minor child."

On September 6, 1957, the petition was amended by adding thereto paragraph 5 as follows:

"5. That since the filing of the original petition in this cause and on, to-wit, this date, September 3, 1957, your petitioner has gotten his minor daughter, Margaret Kilgrow, ready to carry her to Loretta School; that petitioner was going to carry his daughter down town to his place of business and wait the opening of Loretta School so that he could carry the child to the school; that petitioner drove his said minor child to town in the automobile with respondent and was intending to turn the automobile over to respondent so that she might go to work; that petitioner and respondent occupied the front seat and the child the back seat;

that petitioner drove the automobile in front of his place of work and got out of the front seat and started to open the back door to get the child, whereupon respondent jumped under the steering wheel and drove the automobile away carrying the child with her, as a consequence of which the said child will not be able to enter Loretta School this morning and will not be able to enter the said school unless the respondent is enjoined and restrained from interfering with the placing of said child in the said school."

On September 9th the respondent demurred to the petition, assigning the following grounds:

"1. There is no equity in said bill of complaint.

"2. For aught that appears from the bill of complaint this is a matter wholly within the family circle and in no wise a matter over which this Court has jurisdiction."

The demurrer was overruled.

The respondent then filed an answer to the petition embodying therein grounds of demurrer questioning the jurisdiction of the court and answering the petition by admitting all of its allegations except those contained in paragraphs 3 through 5, which she denies and of which she demands strict proof. Thereupon, on September 9th a hearing was had before the trial court and testimony taken on behalf of both petitioner and respondent. At the conclusion of the hearing a decree was rendered granting to petitioner the relief prayed for. To the extent here pertinent, the decree provides as follows:

"Ordered, adjudged and decreed by the court that the said demurrer of the respondent to the petition as amended be and the same is hereby overruled.

"And now coming to the merits of the matter the court is of opinion that it has jurisdiction of this matter. While

it is true that the father of a minor child has in general the right to direct the education of his minor child, this right is subject to review and correction by the court if not exercised for the best welfare of the child. The decision of the father is prima facie correct, but subject to be rebutted by proper proof from the other parent.

"The court has gone into the evidence in this case at length and has heard about ten witnesses all told, and upon a consideration of the same the court is of opinion that it is for the best interest of the minor child involved in these proceedings that she remain in the school where the father has placed her and that the mother refrain from interfering with the schooling of said minor child. It is, therefore,

"Ordered, adjudged and decreed by the court

"1) that it is for the best welfare of the child, Margaret Kilgrow, that she continue her studies where her father has placed her, in Loretta School.

"2) That Mrs. Christine B. Kilgrow be and she is hereby enjoined and restrained from interfering with the schooling of the said child at Loretta School, and that said child continue her schooling there until and unless this order be changed in proper proceedings."

Although the decree setting the hearing recited that it would be upon the motion for a preliminary injunction, it seems that the proceeding was conducted as though it were a final hearing on the merits. This is made clear by the decree itself; and the parties also have treated it as a final decree on the merits. We shall do likewise.

From the pleadings and evidence it clearly appears that the dispute between the parents grows out of the fact that the father and mother are of different religious faiths. Loretta is a school operated by the church of the father's religious faith. He wants the child to attend that school while the mother wants her to attend a public school.

There was introduced in evidence an antenuptial agreement whereby the parties agreed that all the children of their marriage "shall be baptized and educated" in the "religion" of the father, whether he be "living or dead."

As we see it, the decisive question presented is whether a court of equity has inherent jurisdiction (there being no statute involved) to resolve a family dispute between parents as to the school their minor child should attend, when there is no question concerning the custody of the child incident to a separation (either voluntary or pursuant to a court order) or divorce of the parents, and to enforce its decision against one of the parents by injunction. In other words, should the jurisdiction of a court of equity extend to the settlement of a difference of opinion between parents as to what is best for their minor child when the parents and child are all living together as a family group?

This appears to be a case of first impression in Alabama and there seems to be little authority bearing on the question from other jurisdictions. In fact, no case has been cited to us, nor have we found any, which has dealt with the precise problem before us.

There can be no doubt that if this were a proceeding to determine the child's custody the equity court would have jurisdiction for that purpose. Ex parte White, 245 Ala. 212, 214, 16 So.2d 500; State v. Black, 239 Ala. 644, 648, 196 So. 713; Thomas v. Thomas, 212 Ala. 85, 86, 101 So. 738. In Campbell v. Sowell, 230 Ala. 109, 111, 159 So. 813, 814, it is stated as follows:

"It is generally recognized that, when a proceeding is instituted to determine the custody of the child, such

child becomes at once a ward of the court."

See, also, Esco v. Davidson, 238 Ala. 653, 655, 193 So. 308. But that is not the situation before us. There is no issue as to the child's custody. Here, the injunctive process is employed at the instance of the father to restrain the mother, who continues to live with the father as a member of the family group and who also has natural custodial rights over her minor child.

It seems to us, if we should hold that equity has jurisdiction in this case such holding will open wide the gates for settlement in equity of all sorts and varieties of intimate family disputes concerning the upbringing of children. The absence of cases dealing with the question indicates a reluctance of the courts to assume jurisdiction in disputes arising out of the intimate family circle. It does not take much imagination to envision the extent to which explosive differences of opinion between parents as to the proper upbringing of their children could be brought into court for attempted solution.

In none of our cases has the court intervened to settle a controversy between unseparated parents as to some matter incident to the well-being of the child, where there was no question presented as to which parent should have custody. In all of our cases the real question has been which parent should properly be awarded custody. Never has the court put itself in the place of the parents and interposed its judgment as to the course which otherwise amicable parents should pursue in discharging their parental duty. Here, the sole difference between the parties is which school the child should attend. And, that difference seems not to have affected the conjugal attitude of the parents one to the other.

The inherent jurisdiction of courts of equity over infants is a matter of necessity, coming into exercise only where there has been a failure of that natural power and obligation which is the province of parenthood. It is a jurisdiction assumed by the courts only when it is forfeited by a natural custodian incident to a broken home or neglect, or as a result of a natural custodian's incapacity, unfitness or death. It is only for compelling reason that a parent is deprived of the custody of his or her child. The court only interferes as between parents to the extent of awarding custody to the one or the other, with the welfare of the child in mind. And it is in awarding custody that the court invokes the principle that the welfare of the child is the controlling consideration. We do not think a court of equity should undertake to settle a dispute between parents as to what is best for their minor child when there is no question concerning the child's custody.

It would be anomalous to hold that a court of equity may sit in constant supervision over a household and see that either parent's will and determination in the upbringing of a child is obeyed, even though the parents' dispute might involve what is best for the child. Every difference of opinion between parents concerning their child's upbringing necessarily involves the question of the child's best interest.

What was said in Knighton v. Knighton, 252 Ala. 520, 525, 41 So.2d 172, 175, is equally pertinent here:

"It intrigues the imagination to contemplate the lengths to which such a power once attempted may be carried, and the difficulty to be encountered in the enforcement of such a decree. Considerations of policy and expediency forbid a resort to injunctive relief in such a case."

It may well be suggested that a court of equity ought to interfere to prevent such a direful consequence as divorce or separation, rather than await the disruption of the marital relationship. Our answer to this is that intervention, rather than preventing or healing a disruption, would quite likely serve as the spark to a smoldering fire. A mandatory court decree support-

ing the position of one parent against the other would hardly be a composing situation for the unsuccessful parent to be confronted with daily. One spouse could scarcely be expected to entertain a tender, affectionate regard for the other spouse who brings him or her under restraint. The judicial mind and conscience is repelled by the thought of disruption of the sacred marital relationship, and usually voices the hope that the breach may somehow be healed by mutual understanding between the parents themselves.

The prenuptial agreement as to the child's religious education has no bearing on the question of the trial court's jurisdiction in this case. The bill does not even attempt to make that agreement a basis for relief.

It is argued that any apprehension about opening wide the jurisdiction of equity is not on sound footing because, in Alabama, a child is required by statute (§ 297, Tit. 52, Code 1940, as amended by Act No. 117, § 3, approved April 14, 1956, Acts Spec.Sess.1956, p. 446), to attend school. Thus, it is argued, the instant case has for its purpose the fulfillment of this mandatory duty. But there is absolutely no question here concerning the neglect or failure of either parent to see that the child attends school. (In so commenting we make it clear that we are not now passing on the validity or constitutionality of any law requiring attendance at school; nor is there occasion to discuss what bearing, if any, evidence of either parent's failure or neglect to provide schooling for the child would have on this case.)

In view of what we have said it is unnecessary to decide whether the decree, in effect ordering that the child attend a school of a particular religious denomination which, according to the evidence, involves mandatory teaching of the religious doctrines of that denomination, would be giving preference by law to a particular religious sect contrary to the First and Fourteenth Amendments of the Constitution of the United States and § 3 of Article 1, Alabama Constitution of 1901.

The decree appealed from is due to be reversed and one rendered here dismissing the petition. It is so ordered.

Reversed and rendered.

All the Justices concur.