## Buysse v. Buysse

C.P. of Chester County, no. 95-03579.

*Kathleen B. Vetrano,* for plaintiff.
*Joseph P. Green,* for defendant.
*Deborah A. McKenty,* guardian ad litem for Brianna Marie Buysse.

MELODY JR., *J.,* June 28, 1999—We have before us "Father's petition for special relief to compel Mother to cooperate in school registration pursuant to Rule 1915.13." After a hearing and arguments of counsel and the guardian ad litem, we determine and adjudicate as follows:[1]

This petition involves the child, Brianna Marie Buysse, who is 6 years of age and who will become 7 years of age on August 28, 1999. Although not subject to the petition and our decision, Brianna's brother, Michael Thomas Buysse,[2] is 5 years of age and will become 6 years of age on October 3, 1999.

---

1. We credit the testimony of Father; however, we do not credit much of the testimony of Mother.

2. Although the petition in this matter does not involve Michael, his very being and his schooling is involved with certain aspects of this matter.

We have not chosen a religion for the child, Brianna. We have, however, only chosen the better of the two schools, which are, realistically, the only two schools involved, as of the termination of the hearing.

As the hearing progressed, we heard testimony about 12 different schools.[3]

However, after reality set in, it was obvious, and agreed to by the parties, that we were limited by common sense to only two schools. The two schools involved are St. Norbert's Catholic School and Katherine D. Markley Public School.[4]

## FINDINGS OF FACT

(1) At the time of the hearing, the child, Brianna, was attending kindergarten and her brother, Michael, was attending pre-kindergarten, at Good Samaritan School in Paoli, Chester County, which was the closest private preschool to their mother's house. However, Good Samaritan School is only a preschool. It has no higher grades. (N.T. pp. 27, 28, 29 and 157.)

(2) With regard to St. Norbert's School, we heard from Father, Mother and Mrs. Helen Locke, the principal of St. Norbert's School. Through the testimony, we were able to learn much about St. Norbert's School as follows:

(A) The school is kindergarten through eighth grade. (N.T. p. 82.)

---

3. The Agnes Irwin School, Villa Marie Academy, Episcopal Academy, The Shipley School, Haverford School, Rosemont School of the Holy Child, Delaware County Christian School, The Christian Academy, The Baldwin School, St. Patrick's School, Katherine D. Markley Public School and St. Norbert's School.

4. Notes of Testimony, p. 134.

(B) The physical plant includes classrooms and a gymnasium facility, which was built in 1992. (N.T. pp. 82 and 83.)

(C) The faculty is a totally lay faculty. (N.T. p. 83.)

(D) The average number of teaching years of the faculty is nine or 10 years, and maybe more. Some of the teachers have been there 20 years. (N.T. p. 83.)

(E) It is accredited by the Middle States Commission on Secondary Schools and Elementary Schools. (N.T. p. 83.)

(F) At the present time, the school consists of one class of each grade. (N.T. p. 84.)

(G) There are 32 children in each class, grades one through eight, and 25 children in the kindergarten, with full aid, for a total of 281 students attending the school. (N.T. p. 84.)

(H) It is intended that the class size will be reduced to 30 students per class, upon the completion of two new nearby schools, for which ground has been broken for construction. (N.T. p. 84.)

(I) There were 23 eighth graders in the Class of 1999, and every one of them was accepted into the school of their choice for ninth grade. (Exhibit PS-1.)

(J) In addition, 13 scholarships were awarded to the graduating students. The scholarships were based upon merit. The scholarships were not based upon financial information. They were based upon scholarship examinations. (Exhibit PS-1 and N.T. p. 87.)

Each year, the school has a minimum of 10 academic scholarships. Three years ago, 20 students received scholarships. (N.T. p. 87.)

(K) The school also received a $40,000 grant from the Connelly Foundation, plus $10,000 in matching funds,

that were assigned to the entire school, for technology. (Exhibit PS-1 and N.T. p. 86.)

(L) Seven of the seventh graders qualified for the Johns Hopkins search for talented youth, by scoring over 900 on the College SAT exam, and two of the seven students were honored as distinguished, by scoring over 1200 on the same exam. (Exhibit PS-1.)

(M) In every subject area, the school is, across the board, higher than the norm for Chester County, as evidenced by the California Achievement Tests. (N.T. p. 87.)

(N) The teachers are not in the business of proselytizing students. (N.T. p. 91.)

(O) In the primary grades, the children are taught *how to respect one another.* How to get along with one another. How to love God. How to act in His image. (N.T. p. 91.)

(P) The teachers teach the children *tolerance and love of one another.* (N.T. p. 95.)

(Q) Computers are taught across the curriculum. In addition to the 17 computers in the computer lab, there are at least four computers in every classroom. (N.T. p. 97.)

(R) The school is also able to meet any special needs of a child through the Chester County Intermediate Unit, which provides remedial schooling, to wit, remedial math, remedial reading, speech therapy, and a guidance counselor. Said services are provided at the school. (N.T. pp. 98 and 99.)

(S) The school also receives nursing, psychological, and psychiatric services through Chester County. (N.T. pp. 98 and 99.)

(T) If Brianna attended first grade at St. Norbert's and Michael attended kindergarten at St. Norbert's, they

would come in contact with each other during the course of the day, to wit, at recess in the morning, at different events, school assemblies and at a number of other events which take place, where the children, in kindergarten through fourth grade, mix. (N.T. pp. 88 and 89.)

(U) The kindergarten program, which Michael could attend, is half of a day, five days a week, with an option for a Tuesday and Thursday all day enrichment program. Thus, Michael could have lunch at the school on Tuesdays and Thursdays. (N.T. pp. 88 and 89.)

(V) Brianna has been accepted for admission to the first grade class at St. Norbert's School in Paoli, Chester County, for the 1999-2000 school term.

Michael has been accepted for admission to the kindergarten class at St. Norbert's School in Paoli, Chester County, for the 1999-2000 school term. (N.T. p. 88.)

(3) With regard to the *Katherine D. Markley Public School,* we heard from Mother and Mrs. Kathleen Seaton, the director of the Episcopal Day School of the Church of the Good Samaritan in Paoli. Through the testimony, we were able to learn very few actual facts about the Katherine D. Markley School as follows:

(A) The school is a general public school.

(B) The school is one of the schools in the Great Valley School District.

(C) There is no way to know either the teacher or the composition of the class that Brianna would attend next year. (Mrs. Kathleen Seaton, N.T. p. 161.)

(D) The Great Valley School District is considered to be in the 98th percentile of schools around the country and thus the schools would not necessarily be a bad environment for any child. (N.T. pp. 60 and 67.)

(4) Miscellaneous:

(A) Most frequently today, present time parents are looking for a values-based education. They are searching for some kind of stability in their children, learning how to appreciate one another, and want their children to grow up with some kind of values. (N.T. p. 100.)

(B) There is no issue before us with regard to the payment of tuition (N.T. p. 37.)

(C) Brianna and Michael form their own support group and it would be in the best interests of the children, if they attend the same school, particularly as children of divorcing parents and the fact that they are only 13 months apart in age. (N.T. pp. 30 and 33.)

(D) Mother and Father were married at St. Norbert's Catholic Church. (N.T. pp. 39, 56 and 104.)

(E) The children were baptized Catholic at St. Norbert's Church. (N.T. p. 39.)

(F) Later, Mother had the children rebaptized at the Paoli Presbyterian Church. (N.T. p. 40.)

(G) Brianna is the type of student who one would expect to excel in both the public school and St. Norbert's. (Mrs. Kathleen Seaton, N.T. p. 163.)

(H) Mrs. Seaton has a concern for Brianna because she is a child who has had an extraordinary amount of stress and disruption in her short life. (Mrs. Kathleen Seaton, N.T. p. 160.)

(I) Mrs. Seaton met with Father and Mother, in 1998, about what would happen at the end of this past school year. Although they discussed a number of different educational settings, there was no agreement between Father and Mother. (Mrs. Kathleen Seaton, N.T. p. 156.)

(J) Mrs. Seaton's only recommendation with regard to first grade was the different possibilities available to Mother and Father. (Mrs. Kathleen Seaton, N.T. p. 157.)

(K) In exhibit PS-2, dated March 2, 1999, Mother stated in the fifth paragraph of that fax, inter alia, "I am not opposed to a Catholic or Christian education per se."

(L) Brianna and Michael attended The Good Samaritan School together, because it was Father and Mother's desire not to separate Brianna and Michael, because their birth dates are only 13 months apart. The children attended Good Samaritan day school and kindergarten by agreement of Mother and Father. (N.T. p. 28.)

(M) We note that although Mother does not agree that they agreed not to separate the children, (N.T. p. 23), their schooling last year provided a de facto *non-separation* to different schools.

(N) Father chooses St. Norbert's School over Katherine D. Markley School, because of *results* as outlined in exhibit PS-1. (N.T. pp. 60 and 65.)

(O) Although Father believes that public schools in the Great Valley School District would not provide as good an education as St. Norbert's School, the public school in the Great Valley School District would be an acceptable alternative, if he had no other choice. (N.T. p. 71.)

(P) Father's position is that St. Norbert's School is the best alternative for his children. St. Norbert's is his first choice as the best education available. (N.T. pp. 72, 73, 78 and 79.)

(Q) Mother has strongly opposed the child attending St. Norbert's based upon the following:

(1) "Class size." (N.T. pp. 123 and 124.)

(2) Katherine D. Markley School's "gifted program." (N.T. p. 125.)

(3) "Ancillary programs." (N.T. p. 125.)

(4) Conflict resolution. (N.T. pp. 129, 130, 131 and 132.)

(5) The Catholic religion taught at the school. (N.T. pp. 133 and 136.)

## DISCUSSION

Our decision and order will not create the religion issue or problem between the parents. The religion issue has existed for years. It existed before the hearing. It existed at the time of the hearing and most probably will exist long after our decision and order.

We have firsthand testimony about St. Norbert's School and, therefore, firsthand information and knowledge about the school.

We do not have any firsthand testimony about the Katherine D. Markley Public School. We have been left with hearsay, probabilities, and maybes with regard to that school. Thus, we do not know enough about the Katherine D. Markley Public School. The only thing that the parents agree upon is that the Great Valley School District is a very good school district. The Katherine D. Markley School may be one of many schools in a very good school district, but that does not mean that it is a good school. As one of my teachers stated, "there are lies, damn lies and statistics." The numerical ratings of school districts are no less misleading than statistics.

Most of the secondhand information which we have with regard to the Katherine D. Markley School is from Mother, which causes us to have considerable doubt as

to its reliability. We also have secondhand information from Mrs. Kathleen Seaton. However, we have no information at all as to the results achieved by the students at the Katherine D. Markley School nor do we know anything about its curriculum. And finally, we do not know if the educational environment is sufficiently rigorous to assure that Brianna will receive a high quality education and be prepared for the next level of education.

We are greatly concerned with regard to the small amount of information that was placed in evidence with regard to the Katherine D. Markley School. If the Katherine D. Markley School measured up to the standards of St. Norbert's School, why did we only hear secondhand information and hearsay, but no firsthand testimony from the principal, vice principal or some other knowledgeable person from the Katherine D. Markley School. We are bound by the evidence presented and by the lack of evidence presented. We certainly cannot decide this matter based upon the religious war testimony of the parents.

We do not believe much of the testimony of Mother, who we observed to be a stubborn, obnoxious and not credible witness. On several occasions, she did not even answer questions of her own lawyer. In addition, during her testimony, she answered many questions with her eyes closed.

We consider and conclude that the "Holy War" was a complete red herring, with regard to which of the two schools is the better school and which school would be in the best interest of the child.

All of us strive to overcome and survive the trials and tribulations of life. In addition, the child, Brianna, must also try to survive the heartaches of her parents' divorce and custody battles, which are rooted in evil and are be-

ing fed by the hatred of the parents for each other. Her only chance to survive is through, inter alia, the principles and goals of an education at St. Norbert's School.

We have chosen St. Norbert's School as the school which we believe will be in the best interest of the child, Brianna. The evidence in this matter cannot support any other conclusion than the one which we have determined.

## ORDER

And now, June 28, 1999, upon consideration of defendant "Father's petition for special relief to compel Mother to cooperate in school registration pursuant to Rule 1915.13," filed May 12, 1999, "answer of plaintiff (Mother) to petition for special relief regarding school registration," filed June 1, 1999, "defendant/Father's reply to new matter concerning petition for special relief regarding school registration," filed June 3, 1999, after a hearing and arguments of counsel and the guardian ad litem, it is hereby ordered and decreed as follows:

(1) Brianna Marie Buysse (d.o.b. 8/28/92) shall attend St. Norbert's Elementary School, beginning in the fall of 1999; and

(2) Both parties shall cooperate in the enrollment and attendance of Brianna Marie Buysse at St. Norbert's Elementary School.