877 So.2d 1164 (2004)
DONNA G.R., Plaintiff-Appellee
v.
JAMES B.R., Defendant-Appellant.
No. 39,005-CA.
Court of Appeal of Louisiana, Second Circuit.
July 2, 2004.
*1165 Robert I. Thompson, III, Shreveport, for Appellant.
Ronald J. Miciotto, Shreveport, for Appellee.
Before STEWART, CARAWAY and LOLLEY, JJ.
CARAWAY, J.
This case involves two interrelated rulings by the trial court which present a res nova issue. After a challenge by the non-domiciliary parent regarding the domiciliary parent's decision to continue home schooling the three minor children, the trial court ruled in favor of the continuance of home schooling. Additionally, the trial court awarded the domiciliary parent permanent spousal support without imputing any employment income to that parent because of her home schooling duties. Finding that the domiciliary parent's decision for home schooling is not in the best interest of the children, we reverse the trial court's ruling and order that the children be enrolled in the public school system. Additionally, we remand for the trial court's reconsideration of the award for permanent spousal support.

Facts
James B.R. ("James") and Donna G.R. ("Donna") separated on July 13, 2002, after 16 years of marriage. Three children were born of the marriage. The oldest (DOB: 5/10/88) was 15 years old at the time of the hearing and in the eighth grade. The second child (DOB: 1/27/91) was 12 and in the seventh grade. The youngest (DOB: 7/3/92) was 11 and in the fifth grade.
The testimony indicates that after James stopped paying the house note for five or six months in 2002, the family was evicted upon the sheriff's sale of the home. After the eviction, Donna refused to live at James' parents' home in Greenwood, and instead took the three children to Grand Cane, where her parents lived. James' towing and wrecker business is also located in Greenwood.
Within a few weeks, James leased a house for the family to live in and began making improvements to it. Donna testified that James never asked her and the children to move back in with him. James testified that when Donna objected to the condition of the rent house, he redecorated and remodeled it to her specifications. Nevertheless, Donna and the children never moved back in with James but eventually acquired a mobile home with her parents' *1166 help and placed it on their land, where she and the children now live.
Donna filed for divorce on September 3, 2002. The interim judgment dated November 18, 2002, awarded the parties joint custody and designated Donna the domiciliary parent. The child support worksheet estimated James' income at $5,000 per month and imputed income of $1,126.67 per month to Donna based on her potential to earn $6.50/hour. Her past work experience included clerical employment at a bank, payroll clerk for a construction company and bookkeeping/inventory control clerk for a department store. During tax season in 2003, she obtained a part-time tax-related job paying $7.50 per hour. From this income data for both parents, James was ordered to pay $1,265 per month child support and $700 per month interim spousal support.
The joint custody implementation plan incorporated into the judgment provided for the children's education as follows:
Each parent will consult with the other and attempt to select the type of education and education process best suited to the children, taking into consideration each parent's economic circumstances and the benefits to be derived from such by the children. Every effort shall be made to continue educating the children as has historically been done. In case of dispute, LSA R.S. 9:335, et seq. shall apply.
James moved for a final divorce in March 2003, and requested termination of the interim spousal support payments. He also alleged that Donna was home schooling the three children, and requested that they be tested prior to their being allowed to return to home schooling in the fall of 2003, "to determine if they are currently at the standard level of education for each of them." The hearing on James' rule was scheduled for April 2, 2003.
On April 1, 2003, Donna filed a rule alleging that she "never worked during the marriage," and because she home schooled the children for 6 years, she "[was] not able to work." She also alleged that the children "are well above their levels in their school work ..., are tested at the end of each year and are well above in their CAT[1] tests."
The trial court rendered the judgment of divorce between the parties on April 2, 2003. The pending rules on the issues of permanent spousal support, home schooling and incidental custody issues were continued until the following month. After a hearing on May 7, 2003, the trial court rendered judgment in Donna's favor, continuing the payment of interim spousal support for an additional six months, ordering James to maintain health insurance coverage on the children, and allowing Donna to continue to home school them. However, the trial court ordered that Charlotte Hansen test the children "no later than July of each year, with a copy of the results to be immediately furnished" to James. The judgment further provided that "the parties each reserv[ed] their right to relitigate this issue."
The record shows that Donna's rule nisi for permanent spousal support was ultimately set for hearing in November 2003. In mid-October, James filed a motion for contempt, for Donna's failure to have the children tested by Ms. Hansen for the 2003 school year. The motion also reiterated James'"desire that the minor children ... be placed in public school." He also alleged that Donna was not free from fault in the dissolution of the marriage.
At the November hearing, the trial court found that Donna was free from fault in *1167 the dissolution of the marriage. She was awarded permanent spousal support in the amount of $750 per month.
On the issue of the education of the children, the court heard the testimony of the two older children, the parents and the housekeeper, who had observed the children's study habits. Additionally, the court received test scores from the CAT administered by a local school teacher in June 2003.[2] In reaching its decision allowing the home schooling to continue, the trial court made the following comments in its oral ruling:
Now, with respect to the school, I agree these children are certainly doing substandard work, however, they have been home schooled for seven years.... I'm not willing to discount the testing that Ms. Rials did from the previous years. However, it is my view that in the future there should be testing annually by an independent tester.
They have been in ... home school for seven years. At this point in the semester, ... I would be reluctant to pull them out and put them in public school. Part of that is the reason  is the adjustment  in some of the concerns that I have about home school program.
This program, well, I've got a couple of concerns about it, and I stated earlier I'm going to let them stay in home school. But Number 1, I don't think they're putting time in from the testimony of the housekeeper. Now, she hasn't been there in the last year, so, but I'm just wondering if the time's really being put in.
Nevertheless, I'm going to let them at least continue until the end of the school year in home school situation.
Finally, the trial court ordered that the children's "future performance be evaluated on an at-least-a-semester basis by a qualified educator, and not by the home school teacher."
The judgment was signed by the trial court on December 16, 2003. James appeals the trial court's award of permanent spousal support and the continuation of the children's home schooling.

Discussion

I.
Since we find that the home school decision has implications regarding the award of permanent spousal support, we will initially address that important ruling. From our research and the parties' argument, this issue has not been previously addressed in this state.
The statutory authority regarding decisions concerning the child's education in a joint custody arrangement is addressed in general in La. R.S. 9:335(B)(3) which provides as follows:
The domiciliary parent shall have authority to make all decisions affecting the child unless an implementation order provides otherwise. All major decisions made by the domiciliary parent concerning the child shall be subject to review by the court upon motion of the other parent. It shall be presumed that all major decisions made by the domiciliary parent are in the best interest of the child.
Additionally, the legislature has provided for the economic decisions regarding private schooling in La. R.S. 9:315.6(1), as follows:
By agreement of the parties or order of the court, the following expenses incurred on behalf of the child may be added to the basic child support obligation:

*1168 (1) Expenses of tuition, registration, books, and supply fees required for attending a special or private elementary or secondary school to meet the needs of the child.
In addition to these statutes, it must not be overlooked that Donna retains the alimentary obligation under Civil Code Article 227 for "supporting, maintaining, and educating" the children. This is further reflected in the child support guidelines which provide as basic principles under La. R.S. 9:315(A) and (B)(2), in pertinent part, as follows:
(A) Basic principles. The premises of these guidelines as well as the provisions of the Civil Code is that child support is a continuous obligation of both parents, children are entitled to share in the current income of both parents, and children should not be the economic victims of divorce or out-of-wedlock birth....
* * *
(B)....
(2) In intact families, the income of both parents is pooled and spent for the benefit of all household members, including the children. Each parent's contribution to the combined income of the family represents his relative sharing of household expenses. This same income sharing principle is used to determine how the parents will share a child support award.
The child support guidelines also address the voluntary unemployment of a parent and assess such parent her "potential income" for the computation of the basic child support obligation. La. R.S. 9:315(C)(6)(b). That potential income attributable to Donna was measured and applied in this case by the trial court raising the amount of the basic child support obligation, yet lowering the amount of support paid by James.[3] The children, however, do not receive any economic contribution for support and maintenance from Donna because of her decision as domiciliary parent to home school the children and not seek employment.
A review of all of the above laws, along with the law for permanent spousal support discussed below, demonstrates the considerable statutory tension underlying this dispute. May Donna utilize her authority as domiciliary parent for making the major decision for the children's education (which is presumed in the best interest of the children) to lessen or avoid her economic support obligation to the children and to increase the permanent spousal support in her favor? Under the particular facts of this case, we find that the evidence rebuts the presumption that Donna's decision for home schooling is in the best interest of the children and that the trial court's ruling to the contrary was an abuse of its discretion.
The most important fact regarding the home schooling is Donna's lack of education. Donna quit school at the age of fifteen and obtained only a GED. She later received vocational technical training in accounting and office skills.
The method of teaching the children centered around computer programs studied by each child on separate computers, with Donna answering questions raised by each child. As noted in the trial court's ruling, the time invested by each child in this process, as revealed in the testimony of the housekeeper, was undisciplined and insufficient.
*1169 These weaknesses in the children's home school education program are further amplified by the lack of any evidence of Donna's formal compliance with La. R.S. 17:236.1, which requires the annual review and approval of a home school study program by the Board of Elementary and Secondary Education. That statute requires the annual submission to the board of "satisfactory evidence that the program has in fact offered a sustained curriculum of quality at least equal to that offered by public schools at the same grade level." La. R.S. 17:236.1(C)(1). In lieu of such submission, Section D of the statute requires verification to the board's satisfaction that the child has met the LEAP testing requirements provided in La. R.S. 17:24.4 or has scored at or above his grade level on the CAT. La. R.S. 17:236.1(D)(1) and (2).
The CAT test score for each child was poor. The oldest child performed slightly above average in the reading segment, but well below average in mathematics and language. The middle child also performed near average in reading, but again well below average in mathematics and language. The youngest child's performance was particularly poor in reading and mathematics, and her language skills were especially low. Moreover, there was no testimony that these apparently deficient CAT scores demonstrate nevertheless that each "child has scored at or above his grade level," in compliance with La. R.S. 17:236.1(D)(2).
When we review the trial court's November 2003 ruling to allow the children to continue with home schooling at that time, the court does not appear to have made a permanent decision, but only a decision through the end of the school year. The decision was also made subject to the continued testing of the children. Such conditional open-ended rulings in child custody disputes invite further litigation. In this case, the decision also indicates to us the court's concern at the time of ruling for moving the children to public schools during the school year. That concern is no longer present.
Finally, Donna's decision as domiciliary parent is outweighed by the economic obligation for the maintenance and support of her children and the increased obligation of spousal support from James which her decision implicates. The parties' use of the public school system, which is the subject of much public policy of this state, will obviously provide economic benefit to the children by freeing Donna to find employment. Accordingly, we find that the trial court's ruling allowing for home schooling was not in the best interest of the children.

II.
Fault is a threshold issue in a claim for spousal support. In a proceeding for divorce or thereafter, the court may award interim periodic support to a party or may award final periodic support to a party free from fault prior to the filing of a proceeding to terminate the marriage, based on the needs of that party and the ability of the other party to pay. La. C.C. art. 111. Jones v. Jones, 38,790 (La.App.2d Cir.6/25/04), 877 So.2d 1061, 2004 WL 1418186; Roan v. Roan, 38,383 (La.App.2d Cir.4/14/04), 870 So.2d 626.
Fault continues to mean misconduct that rises to the level of one of the previously existing fault grounds for legal separation or divorce. Revision Comment (c) of 1997, La. C.C. art. 111; Jones, supra; Roan, supra. Fault that precludes an award of spousal support must have occurred prior to the filing of the action for divorce. To constitute legal fault, misconduct must not only be of a serious nature, but must also be an independent contributory or proximate cause of the separation. Jones, supra.; Mayes v. *1170 Mayes, 98-2228 (La.App. 1st Cir.11/5/99), 743 So.2d 1257. They include adultery, conviction of a felony, habitual intemperance or excesses, cruel treatment or outrages, public defamation, abandonment, an attempt on the other's life, status as a fugitive, and intentional non-support. Mayes, supra. Abandonment by a spouse occurs when that spouse withdraws from the common dwelling without lawful cause and constantly refuses to return. Id. One of the elements necessary to prove abandonment is that the abandoned spouse desired the other spouse's return. Id.
Once freedom from fault is established, the basic tests for the amount of spousal support are the needs of that spouse and the ability of the other spouse to pay. La. C.C. arts. 111 and 112; Roan, supra. The award for final periodic spousal support is governed by La. C.C. art. 112, which requires the court to consider all relevant factors. Roan, supra. Permanent alimony is awarded to a former spouse in need and is limited to an amount sufficient for maintenance as opposed to a continuation of an accustomed style of living. Mizell v. Mizell, 37,004 (La.App.2d Cir.3/7/03), 839 So.2d 1222.
Domestic relations issues such as the determination of entitlement to spousal support largely turn on evaluations of witness credibility. Jones, supra. The trial court has vast discretion in matters regarding determination of fault for purposes of precluding final periodic support. The trial judge's finding of fact on the issue of fault will not be disturbed unless it is manifestly erroneous or clearly wrong. Id.
Although James does not precisely articulate the legal basis for Donna's alleged fault nor cite any prior ruling of a Louisiana court, he states that she would not return to live with him in the house he rented a few weeks after the eviction. We consider this argument for fault as resting upon abandonment, and we reject it.
The real separation of the parties occurred prior to James' lease of alternative housing, when his reckless financial actions led to the eviction of his family from their home. Donna and the children were forced into a smaller dwelling, which was not her parents' home but was located on their property. James did not seek to join them there. Concerning the small two-bedroom house that James later rented and renovated, Donna testified that she never indicated any reconciliation with James and any agreement to reside in the rented residence. Under these facts, we do not find James' assertions of abandonment free from his own fault. The family breakup occurred because of the eviction which he, with an admitted income of $5,000 per month, failed to prevent. The ruling of the trial court finding no fault on Donna for the breakup of the marriage is affirmed.
Despite this affirmance of the trial court's ruling on Donna's lack of fault, the trial court's award of $750 per month for permanent spousal support must be revisited by the trial court in view of our ruling ending home schooling. Accordingly, we remand this matter to the trial court. Any adjustment or termination of permanent spousal support shall be made prospective only at the time of the hearing.

Conclusion
In accordance with this opinion, the trial court's rulings allowing home schooling of the children is reversed. It is hereby ordered, adjudged and decreed that within seven days of the finality of this judgment, the children should be enrolled in the appropriate public schools in accordance with La. R.S. 17:236.2 and the rules and regulations of the local school board. Any costs associated with the children's enrollment in the public schools shall be borne by *1171 appellant. The case is remanded to the trial court for immediate docketing with a priority setting to assure compliance with this court's order and to reconsider the award of $750 per month permanent spousal support, to determine if such award should be prospectively modified.
Costs of appeal are assessed to appellant.
AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
NOTES
[1] "CAT" refers to the California Achievement Test.
[2] The teacher was not Charlotte Hansen as ordered by the court. She was Donna's friend, and she did not testify at the hearing.
[3] The basic support obligation from the parties' combined income, including the income imputed to Donna, was $1559, of which James' share was $1265. If only James' $5000 in monthly income had been used, the basic support obligation is listed in La. R.S. 9:315.19 at $1349, which would be entirely paid by James.