964 So.2d 24 (2007)
Mark S. MORGAN
v.
Heidi S. MORGAN.
No. 2050348.
Court of Civil Appeals of Alabama.
March 16, 2007.
*26 William J. Moore, Enterprise, for appellant.
Robert H. Brogden, Ozark, for appellee.
MOORE, Judge.
Mark S. Morgan ("the father") appeals from the Dale Circuit Court's judgment modifying the parties' judgment of divorce. The father alleges multiple errors by the trial court. We affirm in part, reverse in part, and remand.
The Dale Circuit Court entered a judgment divorcing the father and Heidi S. Morgan ("the mother") on November 9, 2004. The court incorporated into its judgment an agreement of the parties, which had been entered into on November 8, 2004. The agreement dictated that the parties would have joint legal custody and joint physical custody of the only child born of the marriage. The parties also agreed that the father would pay the mother $500 per month in child support; *27 that the father would assume responsibility for all of the parties' outstanding joint living expenses at the time of the divorce; that a jointly owned house in North Carolina would be sold and the proceeds applied to the outstanding debts of the parties; that the father would pay $4,000 to the mother as a property settlement to be used as a down payment toward the purchase of a new house; and that no alimony was to be awarded to either party. The agreement made no provision for the future education of the child.
On March 3, 2005, the father filed a petition to modify the divorce judgment, alleging a change in circumstances and requesting that he be awarded sole physical custody of the child. The mother filed an answer and a counterclaim on March 9, 2005, alleging that there had been a material change in circumstances and seeking sole legal custody and sole physical permanent custody of the child and increased child support. The mother also filed a motion for emergency relief on March 9, 2005, asking the court to order that the child be placed in public school and specifying a proposed schedule regarding the child's visitation with each parent; the father filed a response objecting to the relief sought in the mother's motion for emergency relief. The court entered a series of pendente lite orders regarding the issues raised by the parties before entering a final judgment on October 26, 2005, in which the court ordered that the parties should continue to have joint legal custody of the child; vested sole physical custody in the mother, subject to visitation by the father; increased the father's child-support obligation; and required the child to enroll in public school. The father filed two postjudgment motions, which the trial court denied. The father appeals, asserting that the trial court erred (1) by requiring the child to attend public school, (2) by modifying his child-support obligation, (3) by awarding sole physical custody of the child to the mother; and (4) by failing to disclose that the trial judge had formerly been a partner in private practice with the mother's counsel.

Standard of Review
This court has limited review in custody matters when the evidence was presented ore tenus. Alexander v. Alexander, 625 So.2d 433, 434 (Ala.Civ.App. 1993). In determining matters of child custody, a trial court is afforded great discretion; its judgment is "presumed correct and will not be disturbed on appeal absent an abuse of discretion or where it is shown to be plainly and palpably wrong." Id. at 434.
Modification of child custody is a matter that falls within the discretion of the trial court. Hester v. Hester, 460 So.2d 1305, 1306 (Ala.Civ.App.1984). In custody cases in which custody has not previously been determined by the court, the appropriate standard of review is the best interest of the child. Ex parte Couch, 521 So.2d 987, 989 (Ala.1988). This standard extends to cases in which the trial court's judgment incorporates an agreement to share custody entered into between the parties. See New v. McCullar, 955 So.2d 431, 435 (Ala.Civ.App.2006).
Additionally, matters of child support, including modifications thereof, are within the discretion of the trial court and "will not be disturbed on appeal, absent a showing that the ruling is not supported by the evidence and, thus, is plainly and palpably wrong." Spears v. Spears, 903 So.2d 135, 136 (Ala.Civ.App.2004).

I.
The father initially argues that the trial court exceeded its discretion in ordering that the child attend a public school. *28 Specifically, he claims that the "trial court stepped in the shoes of the parents and decided what school was proper for the minor child" and thereby superseded "the rights given to the parents by the Constitution of the United States" to choose what school their child would attend. The father does not argue that the trial court erroneously concluded that the child should attend public school; rather, he argues that the trial court had no authority to even consider the issue. In essence, the father argues that the trial court had no subject-matter jurisdiction over the dispute between the parents regarding the education of their child.
The father filed an objection to the trial court's pendente lite order requiring the child to attend public school, but he did not argue that the trial court lacked jurisdiction over the matter. He also failed to raise the argument in his postjudgment motions. However, challenges to subjectmatter jurisdiction may be raised for the first time on appeal, because "a lack of jurisdiction cannot be waived." Takao v. Zoning Bd. of Adjustment of Birmingham, 656 So.2d 873, 874 (Ala.Civ.App. 1995).
The facts pertinent to this issue are as follows. The mother and the father agreed to homeschool the child beginning in August 2004. Their decision was based largely on the fact that the child was diagnosed with attention-deficit/hyperactivity disorder and post-traumatic stress disorder, but it was also based on the mother's belief that the child's public-school teacher at the time did not seem concerned about the child's emotional needs. From August until December 2004, the mother directed the child's homeschooling, with the father tutoring him only in math. At that time, the mother was engaged in part-time employment that began at 3:00 p.m. Beginning in January 2005, the mother began working full-time, and the father took over the child's homeschooling. (R. 118). On March 9, 2005, the mother filed a motion requesting that the child be placed in public school because he could no longer be adequately homeschooled due to the working schedules of the parents. On March 30, 2005, the trial court heard ore tenus evidence regarding the motion. The father testified that the child was doing much better in homeschooling than he had done at public school. He stated that he did not consider it to be in the best interest of the child to stop homeschooling and to resume the child's attendance at public school due to the parents' work schedules. On the other hand, the mother stated that she believed the child would benefit from enrolling in public school. She testified that the parents' work schedules did not give them ample opportunity to adequately homeschool the child and that the child would advance socially by being around other children. The mother testified that since March 2, 2005, the child had been doing very little homeschooling. The child testified that he was up-to-date on his school work, that he was happy with homeschooling, and that he did not want to go to public school because of troubles he had had in the past in public school. He further testified that he did not mind being alone at times when he would normally be in school and that he still mingled with friends in a nonschool environment. He believed that his father was homeschooling him as well as his mother had. He also stated that he would be willing to go back to public school and that he felt he would do well there.
At the conclusion of the hearing, counsel for both parties asked the court to postpone any decision on the change-of-school issue because only two months remained in the academic year. Accordingly, the court issued a pendente lite order reserving a *29 ruling on the issue until after the final hearing in this matter.
On June 28, 2005, the trial court set the matter for a final hearing to take place on September 6, 2005. The mother moved the trial court to expedite the final hearing because public school was set to commence on August 8, 2005. Instead, on July 6, 2005, the court entered another pendente lite order in which it concluded that it had heard sufficient evidence to make a determination regarding the school issue. The court ordered the child to be enrolled in public school, pending the final hearing and the entry of further orders of the court. When the father objected to this order, the trial court set a hearing on the matter for August 12, 2005. The court subsequently ordered that it would hear the father's objection to the July 6, 2005, order at the final hearing, which had been postponed to October 5, 2005.
On October 5, 2005, the trial court conducted the final ore tenus hearing in this case. At that hearing, the father testified that the child had enrolled in public school as directed and seemed to be doing well, although several of his friends had been expelled for drug use. Nevertheless, he still wanted to homeschool the child. The mother testified that the child, who had been homeschooled only during his seventh-grade year, had failed the seventh-grade math and language placement tests; she stated that the child had been placed in the eighth-grade class based on his honor-roll performance in the sixth grade. Although he thought he had done an excellent job tutoring the child, the father was not aware that the child had failed the seventh-grade math and language placement tests. One of the child's teachers testified that the child had adjusted to public school, was making good grades, and had friends. The child testified that he preferred to remain in public school. In its final judgment, entered on October 26, 2005, the trial court ordered that the child continue to attend public school.
The Supreme Court of Alabama has previously addressed the power of a trial court to resolve a parental dispute regarding the education of a child in only one case, Kilgrow v. Kilgrow, 268 Ala. 475, 107 So.2d 885 (1959). In Kilgrow, supra, married parents became embroiled in a dispute regarding the education of their child. The father wanted the child to attend a school operated by the church of his religious orientation while the mother preferred that the child be enrolled in public school. After the mother interfered with the father's attempts to take the child to the religious school, the father petitioned the chancery court for an injunction. The chancery court took jurisdiction of the petition and ordered the mother to refrain from interfering with the schooling of the child at the institution selected by the father.
On appeal, the Supreme Court considered the decisive question to be
"whether a court of equity has inherent jurisdiction (there being no statute involved) to resolve a family dispute between parents as to the school their minor child should attend, when there is no question concerning the custody of the child incident to a separation . . . or divorce of the parents, and to enforce its decision against one of the parents by injunction. In other words, should the jurisdiction of a court of equity extend to the settlement of a difference of opinion between parents as to what is best for their minor child when the parents and child are all living together as a family group?"
268 Ala. at 478, 107 So.2d at 888. The Court held that the chancery court had no jurisdiction over the dispute. The Court reasoned that a chancery court obtains *30 jurisdiction over children only in cases in which the custody of a child is in question or in cases in which the custodians have forfeited their authority over the child. 268 Ala. at 479, 107 So.2d at 888. The Court said, "We do not think a court of equity should undertake to settle a dispute between parents as to what is best for their minor child when there is no question concerning the child's custody." 268 Ala. at 479, 107 So.2d at 888.
Kilgrow does not answer the question presented in this appeal. Unlike in Kilgrow, the parties in this case were divorced and were sharing joint legal custody and joint physical custody of the child before any dispute regarding the child's education arose. After the divorce, the father petitioned for a change in this custody arrangement and the mother responded with a counterclaim requesting a change of custody. At the same time, the mother moved the court to order that the child attend public school. The father objected, asserting that he wanted the child to continue homeschooling. Thus, the question whether the child should attend public school as desired by the mother was joined with a dispute as to custody.
In Kilgrow, supra, the Supreme Court recognized that a trial court had the power to assume jurisdiction over a custody dispute, but it did not address the power of a court hearing a custody dispute to entertain a petition regarding the proper education of the child. However, since Kilgrow was decided the Alabama Legislature has clarified that a trial court may exercise jurisdiction over a dispute between divorced parents sharing joint legal custody as to the proper mode of a child's education.
Section 30-3-151(2), Ala.Code 1975, provides that "joint legal custody" confers upon the custodians equal rights and responsibilities for major decisions regarding the education of the child. Section 30-3-151(2) further provides, however, that "[t]he court may designate one parent to have sole power to make certain decisions while both parents retain equal rights and responsibilities for other decisions." Section 30-3-153 states that when a trial court implements joint custody based on an agreement of the parties, "the court shall require the parents to submit, as part of their agreement, provisions covering matters relevant to the care and custody of the child, including, but not limited to, . . . [t]he care and education of the child." Ala.Code 1975, § 30-3-153(a)(1). In the event the parties cannot agree, "the court shall set the plan." Ala.Code 1975, § 30-3-153(b).
In Kilgrow, the Supreme Court noted that no statute conferred jurisdiction on a trial court to decide a dispute between married parents as to the proper mode of education for their child. 268 Ala. at 478, 107 So.2d at 888. On the other hand, §§ 30-3-151 and -153 clearly vest the trial court with the authority to settle disputes between joint custodians regarding the education of the child. However, a review of the record shows that the trial court did not invoke either statute when deciding the schooling issue. Although the trial court had the statutory authority under § 30-3-151(2) to designate one parent to have sole power to decide educational issues, the trial court did not do so. Likewise, the trial court did not require the parents to submit a plan as to the education for the child when they submitted their joint-custody agreement, and the court did not "set the plan" before entering the original joint-custody award, as allowed by § 30-3-153. Instead, it appears that the trial court rested its decision on its inherent authority to resolve disputes between parents with joint custody *31 as to the education of the child. We find no error in this regard.
Although no Alabama case has heretofore declared that a circuit court may resolve a schooling dispute among divorced parents sharing joint legal custody of a child, other states have uniformly recognized that a court invested with jurisdiction over custody issues may do so. See Seyler v. Seyler, 201 S.W.3d 57 (Mo.Ct. App.2006) (test for determining when a court should order private or parochial schooling for a child over wishes of one parent is when the schooling will meet the particular educational needs of the child); Donna G.R. v. James B.R., 877 So.2d 1164 (La.Ct.App.2004) (affirming judgment of trial court ordering that children enroll in public school over custodial parent's wishes because attending public school was in children's best interest); Buysse v. Buysse, 42 Pa. D. & C. 4th 415 (Pa.Com. Pl.1999), aff'd, 797 A.2d 1020 (Pa.Super.Ct.2002) (affirming trial court's judgment ordering child to attend a particular school in settling a dispute between married parents); Sotnick v. Sotnick, 650 So.2d 157 (Fla.Dist.Ct.App.1995) (affirming selection of school by trial court to resolve impasse between divorced parents with joint custody); and Anderson v. Anderson, 56 S.W.3d 5, 8 (Tenn.Ct.App.1999) (when parents have joint custody, it is appropriate for trial court to intercede and "break the tie" if parents cannot agree on child's education).
The import of these cases is that the right to direct the education of a child is a fundamental constitutional right of a parent concomitant with the right to custody of the child. See Pierce v. Society of Sisters of the Holy Names, 268 U.S. 510, 534-35, 45 S.Ct. 571, 69 L.Ed. 1070 (1925) (citing Meyer v. Nebraska, 262 U.S. 390, 43 S.Ct. 625, 67 L.Ed. 1042 (1923)). A trial court exercising the power of the state may not usurp the role of the parent and unilaterally compel any particular form of education; however, as the arbiter of custody disputes, the trial court may decide which of the competing plans proffered by the custodial parents is in the best interests of the child, considering the child's educational needs, and the court may enter a valid, enforceable order in that regard. In short, a court with subject-matter jurisdiction over custody issues has the inherent authority to resolve any educational dispute between divorced custodial parents who have equal constitutional rights concerning the education of their child.
Like the courts in other states, Alabama courts have long recognized that one of the bundle of rights associated with custody is the right to direct and support the education of the child. See Payne v. Graham, 20 Ala.App. 439, 102 So. 729 (1925); Willing v. Willing, 655 So.2d 1064 (Ala.Civ. App.1995). Alabama law further recognizes that parents sharing joint legal custody without modification have equal constitutional rights to the care, custody, and control of the child and that, therefore, as a general rule, a court may apply the best-interests standard in a custody dispute between such parents without implicating the Fourteenth Amendment due-process rights of either parent. See R.S.C. v. C.V.C., 812 So.2d 361, 366-67 (Ala.Civ.App. 2001). Consistent with this analysis, it follows that a trial court with jurisdiction over a custody matter has inherent authority to decide a dispute between parents with joint custody as to the education of the child, using the best-interests standard.
Disputes are bound to arise as to the proper course of education for a child. In all cases, the parents should endeavor to resolve those disputes between themselves without state intervention. When they *32 cannot, however, either of them has the right to petition a circuit court to resolve the dispute. A circuit court already vested with the power to decide other custody issues naturally has the jurisdiction to determine which plan best serves the educational needs and other interests of the child.
Accordingly, we find that the circuit court in this case had subject-matter jurisdiction over the mother's motion requesting that the child been enrolled in public school and that its exercise of that jurisdiction did not violate the father's constitutional right to control the education of the child. Since the father does not raise any issue as to the manner in which the trial court exercised its jurisdiction, and does not question the sufficiency of the evidence to support the determination of the trial court, we find no error in the trial court's decision regarding the education issue.

II.
The father next contends that the trial court exceeded its discretion in its determination of child support.
The trial court awarded $1,429 per month in child support to the mother, "determined by the application of the Child Support Guidelines and the [Alabama Rules of Judicial Administration]." The combined monthly adjusted gross income for the parties is $10,730. The Child Support Guidelines, found in the Appendix to Rule 32 of the Alabama Rules of Judicial Administration, provide the monthly basic child-support obligation for combined monthly incomes ranging from $550 to $10,000. Rule 32(C)(1), Ala. R. Jud. Admin., provides that "[t]he court may use its discretion in determining child support in circumstances where combined adjusted gross income is below the lowermost levels or exceeds the uppermost levels of the schedule." This discretion is not unbridled; the award must relate to the reasonable and necessary needs of the child as well as to the ability of the obligor to pay the amount determined by the trial court. Batain v. Batain, 912 So.2d 283, 284 (Ala. Civ.App.2005).
The father argues that the child-support award ($1,429), combined with the debts incurred by the father as a result of the agreement of the parties in the original divorce judgment, will leave him with an unreasonably small amount of net income on which to live. The agreement incorporated into the original divorce judgment required the father to assume responsibility for all outstanding joint living expenses of the parties. Pursuant to the divorce judgment, the father was obligated to pay certain monthly living expenses; those expenses totaled approximately $4,617.54 per month and were subject to change. Included in that estimate were amounts for cable television, power, telephone service, water, rent, and insurance. The remaining proceeds from the sale of the parties' jointly owned house in North Carolina were to be applied to the outstanding debts of the parties as well.
Based on the father's reported monthly adjusted gross income of $9,206, the amount of the debt assigned to him in the divorce judgment that included the parties' outstanding joint living expenses, and the anticipated alleviation of certain other debt after the sale of the North Carolina house, it does not appear that the father would be unable to pay the amount of child support awarded by the trial court. It also does not appear, however, that the award of child support rationally relates to the reasonable and necessary needs of the child.
The agreement of the parties incorporated into the original divorce judgment dictated that the father would pay $500 in child support to the mother. Although the final judgment of modification awarded *33 sole physical custody to the mother, rather than the joint physical custody originally agreed upon, the trial court instructed the parents to continue with the same custody/visitation schedule they were operating under before the modification. Specifically, in addition to the father's general visitation rights as the noncustodial parent, the father was awarded visitation with the child from the time the child gets out of school until the time when the father leaves for work on weekdays that the father has his night work schedule; on those days, the father begins work at 10:00 p.m.
Our review of the record shows that neither party introduced any evidence indicating that the financial needs of the child had increased since the time of the entry of the original divorce judgment. The record also fails to disclose that the child's extracurricular activities had changed since the entry of the original judgment. In Dyas v. Dyas, this court remanded the case to the trial court when the only evidence of expenses related to the children were costs that may have been associated with the minor children's recreational activities in the future. 683 So.2d 971, 973-74 (Ala.Civ.App.1995). In the present case, there was no evidence presented relating to the expenses associated with the financial needs of the child.
The judgment of the trial court pertaining to child support is therefore reversed, and this cause is hereby remanded. On remand, the trial court should take sufficient evidence to ascertain the reasonable and necessary needs of the child in making an award of child support.

III.
The father next argues that the trial court exceeded its discretion in determining that there had been a material change in circumstances and in awarding the mother sole physical custody of the child.
Before the divorce, the parties were leasing a house in Ozark. The mother purchased a house after the divorce, but the parties agreed that the mother and the child would continue to live in the leased house in Ozark until the mother's new house received the necessary repairs to make it "livable." The father slept in a motor home parked outside of the rental house while the mother and the child slept inside. On March 2, 2005, the father asked the mother to vacate the house after he found a number of e-mail messages regarding the mother's relationship with another man. For at least two days thereafter, the father allowed the mother to visit the child only if the father was present. Thereafter, the child began to visit his mother on weekdays after his father left for work in the afternoon. There was evidence presented indicating that, after the mother vacated the house on March 2, the father slept in the same room as the child for a period of time, the child was left alone in the house while the father was at work late at night, the child searched the Internet for sexually explicit materials in the father's absence, and the child accompanied the father to work at times.
As discussed earlier, after the original divorce agreement, the parents became unable to agree on the education of the child; the mother desired that the child attend public school, and the father wanted to continue homeschooling the child. At the trial of this matter, the father testified that he did not wish to speak to the mother if it did not "directly involve life and limb," because, he said, the parties only argue. By the time of the trial, the mother had recently remarried and was expecting another child. At the time of the trial, the child, during his father's custody periods, stayed with his mother after school *34 until his father arrived home at approximately 10:30 or 11:00 at night.
The father argues that the trial court exceeded its discretion in determining that there had been a material change in circumstances warranting the award of sole physical custody of the child to the mother. In cases in which a parent seeks a modification of a joint-custody arrangement, the parent must prove "`a material change of circumstances of the parties since the prior [judgment] which change of circumstances is such as to affect the welfare and best interest of the child or children involved.'" Watters v. Watters, 918 So.2d 913, 916 (Ala.Civ.App. 2005) (quoting Ponder v. Ponder, 50 Ala. App. 27, 30, 276 So.2d 613, 615 (Ala.Civ. App.1973)). In cases in which neither parent has previously been awarded primary physical custody, including cases in which the parties' agreement to share physical custody was incorporated into the divorce judgment, "`"the best interests of the child" standard applies.'" New v. McCullar, 955 So.2d at 435 (quoting Ex parte Johnson, 673 So.2d 410, 413 (Ala.1994)).
In considering the best interests of the child, the court must consider the individual facts of each case, including the following factors: the sex and age of the child; the child's emotional, social, moral, material, and educational needs; the home environments offered by the parties; the characteristics of those seeking custody, including age, character, stability, and mental and physical health; the capacity and interest of each parent to provide for the emotional, social, moral, material, and educational needs of the child; the interpersonal relationship between the child and each parent; the effect on the child of disrupting or continuing an existing custodial status; the preference of the child; available alternatives; and any other relevant matter the evidence may disclose. Gonzalez v. Gonzalez, 908 So.2d 255, 261-62 (Ala.Civ.App.2004).
In deciding whether to award joint custody, either legal or physical, the court must also consider the following factors:
"(1) The agreement or lack of agreement of the parents on joint custody.
"(2) The past and present ability of the parents to cooperate with each other and make decisions jointly.
"(3) The ability of the parents to encourage the sharing of love, affection, and contact between the child and the other parent.
"(4) Any history of or potential for child abuse, spouse abuse, or kidnapping.
"(5) The geographic proximity of the parents to each other as this relates to the practical considerations of joint physical custody."
Ala.Code 1975, § 30-3-152(a). In the present case, both parties alleged that there had been a change in circumstances and asked for sole physical custody of the child. The evidence indicates that the parents are no longer able to agree on the child's education; that, after the divorce, the father limited the child's contact with the mother for a short period of time; and that the parents no longer live on the same property, as they had done before the father filed his petition to modify. These facts alone show a change of circumstances sufficient to invoke the power of the court to modify custody.
We do not find that the trial court was plainly and palpably wrong in its award of sole physical custody to the mother, particularly in light of the instruction regarding weekday visitation with the father, which demonstrates the trial court's efforts to minimize any disruptive effects on the child. The ore tenus evidence presented regarding the work schedules, living situations, and behavior of the parties following *35 their divorce supports the trial court's determination that awarding sole physical custody to the mother is in the best interest of the child.

IV.
Finally, the father contends that it was improper conduct for the trial judge to fail to disclose that he was formerly a partner in a private law practice with counsel for the mother. In support of this contention, the father quotes from the Commentary to Canon 2 of the Alabama Canons of Judicial Ethics, which states, "A judge must avoid all impropriety and appearance of impropriety."
Canon 3.C.(1), Alabama Canons of Judicial Ethics, states:
"(1) A judge should disqualify himself in a proceeding in which his disqualification is required by law or his impartiality might reasonably be questioned, including but not limited to instances where:
"(a) He has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding;
"(b) He served as a lawyer in the matter in controversy, or a lawyer with whom he previously practiced law served during such association as a lawyer in the matter, or the judge or such lawyer has been a material witness concerning it."
The father does not suggest that the trial judge was associated with counsel for the mother during counsel's representation of the mother. Counsel for the mother states that the partnership between the trial judge and the mother's attorney was dissolved more than nine years before the trial in the present case. Numerous advisory opinions by the Alabama Judicial Inquiry Commission affirm that a judge is not disqualified from hearing a case if his or her former law partner did not represent the party while the party's attorney and the judge were law partners. See Alabama Judicial Inquiry Commission Advisory Opinions 78-41, 83-170, 84-207, 86-283, 89-378, and 95-548. While those advisory opinions are not binding on this court, appellate courts will take them into consideration. See Ex parte City of Dothan Personnel Bd., 831 So.2d 1, 6 (Ala. 2002).
Based on Canon 3 of the Alabama Canons of Judicial Ethics, the advisory opinions of the Judicial Inquiry Commission based thereon, and the length of time between the present case and the partnership between the trial judge and counsel for the mother, we conclude that the trial judge would not have been disqualified from hearing this case.
In cases in which judges do not deem themselves disqualified from a proceeding by the terms of Canon 3.C., Canon 3.E. of the Alabama Canons of Judicial Ethics states that they "may nonetheless make information concerning interests or relationships available." (Emphasis added.)
The father does not cite any specific instances throughout the trial that evidence any act of bias or prejudice toward the mother by the judge. The father argues that the association between the judge and the mother's attorney should have been disclosed so that the parties would have had the opportunity to request that the judge recuse himself from the hearing. We have already stated that the trial judge would not have been disqualified from hearing the present case, and Canon 3.E. of the Alabama Canons of Judicial Ethics leaves the decision as to whether to disclose relationships that would not otherwise disqualify the judge within the discretion of the trial judge.
*36 Based on the foregoing, we conclude that the trial judge did not err in denying the father's motion for a new trial or in failing to disclose his former relationship with counsel for the mother.

Conclusion
We affirm the trial court's judgment with regard to its determination that the child remain in public school and its award of sole physical custody to the mother. We reverse the judgment insofar as it awarded $1,429 per month in child support, and we remand the cause for the trial court to take sufficient evidence to ascertain the reasonable and necessary expenses of the child.
We do not find error in the trial court's failure to grant the father's motion for a new trial based on the trial judge's failure to disclose his prior relationship with the mother's counsel, and that decision is therefore affirmed.
The appellee's request for the award of an attorney fee on appeal is denied.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH INSTRUCTIONS.
PITTMAN, BRYAN, and THOMAS, JJ., concur.
THOMPSON, P.J., concurs specially.
THOMPSON, Presiding Judge, concurring specially.
I concur in the main opinion. I write specially with regard to this court's affirmance of the trial court's ruling that the child should attend a public school. I believe that in many circumstances homeschooling can be an appropriate or advisable alternative to conventional schooling and that it can be more effective for some children. However, given the particular facts of this case, I agree with the main opinion's conclusion that the trial court had the authority to determine that the child should go to a public school and also that, given the deference this court must afford to the trial court's ruling based on ore tenus evidence, the father did not demonstrate that the trial court exceeded its discretion in reaching that decision.