# IN THE SUPREME COURT OF IOWA

No. 22–0686

Submitted October 10, 2023—Filed January 12, 2024

**IN RE THE MARRIAGE OF MARY C. FRAZIER AND SHANNON L. FRAZIER.**

Upon the Petition of **MARY C. FRAZIER** n/k/a **MARY C. STREICHER,**

Appellant,

and concerning **SHANNON L. FRAZIER,**

Appellee.

---

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Clinton County, John Telleen, Judge.

A father with joint legal custody of two children seeks further review of the court of appeals decision reversing the dismissal of the mother's application for vaccination determination. **DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT AFFIRMED.**

Christensen, C.J., delivered the opinion of the court, in which Mansfield, Oxley, and McDermott, JJ., joined. McDonald, J., filed a dissenting opinion, in which May, J., joined. Waterman, J., took no part in the consideration or decision of the case.

Jacob R. Koller (argued) and Ryan C. Shellady of Simmons Perrine Moyer Bergman, PLC, Cedar Rapids, for appellant.

Richard A. Davidson (argued) of Lane & Waterman, LLP, Davenport, for appellee.

**CHRISTENSEN, Chief Justice.**

The issue in this case is not whether the district court *ever* has the authority to resolve a dispute between separated parents over an important decision affecting their children, but rather *when* and *how* the district court may resolve that dispute. Here, divorced parents with joint legal custody disagree on whether their children should receive the COVID-19 vaccine. The parents' attempt to resolve this dispute through mediation was unsuccessful, prompting Mom to seek the district court's authorization to vaccinate the children against COVID-19 by filing an application for vaccination determination. Without ruling on the merits of Mom's application, the district court concluded it lacked the authority to act and dismissed the case. The court of appeals reversed and remanded the case with instructions for the district court to hear Mom's application on the merits. On further review, we vacate the court of appeals decision and affirm the district court's dismissal of Mom's case.

The language of Iowa Code section 598.1(3) is clear that the parents' status as joint legal custodians provides them with equal participation in decisions affecting their children's medical care. Mom's application for vaccination determination attempts to end-run around the dissolution decree that gave the parents joint legal custody. Because Mom did not request a modification of the custody agreement pursuant to statute, the district court does not have the authority to resolve the parents' dispute.

**I. Background Facts and Proceedings.**

Mary Streicher and Shannon Frazier became parents to L.F. in 2011 and O.F. in 2013 before divorcing in 2014. Their 2014 dissolution decree granted them joint legal custody of their children and awarded Mary physical care. The decree incorporated the parties' stipulation of settlement, which provides in relevant part:

> Except under emergency circumstances, the parties shall consult with each other in advance and make mutual decisions with regard to their child(ren)'s elective surgical or medical procedures, cosmetic repairs, psychotherapy, orthodontia, and treatment of major illnesses. Either party may request a second independent, professional opinion if he/she disagrees with the elective treatment decision.

Additionally, if the parents cannot resolve a dispute involving the children's medical treatment, the stipulation requires them to attempt to resolve the dispute through either mediation or counseling before initiating court proceedings over the matter. That is what occurred here in December 2021, when the parents disagreed over vaccinating the children against COVID-19.

Following an unsuccessful mediation, Mary filed an application for vaccination determination, asking the district court to authorize the children's COVID-19 vaccination. Shannon resisted, arguing that Mary failed to properly invoke the district court's jurisdiction and that the district court lacked the authority to act as a tiebreaker between the parents. Following a hearing, the district court denied Mary's application. It explained that the parents' decree gave them joint legal custody over the children and stated that "until that provision of the decree has been modified, each party has the right to equal participation in decisions concerning medical care." Because "[n]o application for modification of the decree has been filed," the district court continued, "[the court] is without jurisdiction to resolve this dispute."

Mary appealed, and we transferred the case to the court of appeals. The court of appeals reversed the district court's order, directing the district court to hear Mary's application on the merits and issue a decision consistent with the children's best interests. One dissenting judge would have affirmed the district court's dismissal. We subsequently granted Shannon's further review application and review this case de novo because it arises in equity. Iowa R. App. P. 6.907; *see also In re Marriage of Mills*, 983 N.W.2d 61, 67 (Iowa 2022).

**II. Analysis.**

Mary contends the district court erred in determining it lacked jurisdiction to function as a tiebreaker in the parents' dispute over vaccinating their children against COVID-19. Although the district court ruling and the parties' briefs use "jurisdiction" and "authority" interchangeably, we want to clarify that these are different concepts. Further, the issue in this case is one of authority, not jurisdiction.

"Subject matter jurisdiction is the power of a court 'to hear and determine cases of the general class to which the proceedings in question belong, not merely the particular case then occupying the court's attention.' " *State v. Yodprasit*, 564 N.W.2d 383, 385 (Iowa 1997) (quoting *Christie v. Rolscreen Co.*, 448 N.W.2d 447, 450 (Iowa 1989)). Here, the district court certainly had subject matter jurisdiction over the parties' decree and any subsequent modifications because Iowa Code section 598.2 gave it such jurisdiction. *See* Iowa Code § 598.2 (2022) ("The district court has original jurisdiction of the subject matter of this chapter."). Nevertheless, there may be other reasons why a district court could not entertain a case. "In such a situation we say the court lacks authority to hear that particular case." *Yodprasit*, 564 N.W.2d at 385 (quoting *State v. Mandicino*, 509 N.W.2d 481, 482 (Iowa 1993)). This occurs, for example, when the plaintiff fails to file "some form of allowable pleading" to properly commence a civil action that would invoke the district court's authority to hear and decide the plaintiff's claim. *Stalter by Stalter v. Iowa Res., Inc.*, 467 N.W.2d 586, 588 (Iowa Ct. App. 1991) (dismissing Iowa Interstate's appeal because it failed to file any form of allowable pleading and thus had no claim before the district court for indemnity); *see also Christie*, 448 N.W.2d at 450.

Similarly, the issue before us is whether Mary properly invoked the district court's authority by filing an application for determination instead of a petition

to modify the parties' decree. On plain language alone, Mary failed to properly commence this action because our rules of civil procedure are clear that "[f]or all purposes, a civil action is commenced by filing a *petition* with the court." Iowa R. Civ. P. 1.301(1) (emphasis added). But Mary argues she should not be subject to a "magic word" test and the district court's authority over post-decree matters "is not so rigid or limited as to require parties to file for a modification (when a party isn't actually seeking to modify prior orders)." In doing so, Mary overlooks the meaning of "joint legal custody" under Iowa Code section 598.1(3).

As joint legal custodians, "neither parent has legal custodial rights superior to those of the other parent." Iowa Code § 598.1(3). Instead, they are entitled to "*equal participation* in decisions" affecting their children's "legal status, medical care, education, extracurricular activities, and religious instruction." *Id.* (emphasis added). "Medical care" includes vaccinations. *See Armstrong v. Curtis*, No. 20–0632, 2021 WL 210965, at *4 (Iowa Ct. App. Jan. 21, 2021) ("[T]he parties should be able to work together on medical issues such as vaccinations."). This statutory definition treats joint custody as an all-or-nothing proposition that "leaves no room for a parceling of rights." *In re Marriage of Makela*, 987 N.W.2d 467, 471 (Iowa Ct. App. 2022). Thus, "[w]hen a court grants one parent a greater share of the legal rights subsumed within the definition of joint legal custody, . . . the award is one of sole legal custody rather than joint legal custody." *Id.* Effectively, Mary is asking the district court to diminish—in one area—Shannon's right to equal participation in a decision affecting the children's medical care.

Practically, this all-or-nothing statutory definition of joint legal custody tends to favor the status quo. The situation simply remains static until the parents can either reach a mutually agreeable course of action together or modify

their custody agreement. Yet, Mary did not file a petition to modify the parents' status as joint legal custodians.

We acknowledge that a petition to modify has not always been necessary to invoke the district court's authority to make custody decisions after the decree is final. In *Helton v. Crawley*, 41 N.W.2d 60 (Iowa 1950), we examined whether a writ of habeas corpus action properly invoked the district court's jurisdiction to resolve a custody dispute between parents living in different states. *Id.* at 68–69. We noted that habeas corpus proceedings ordinarily applied "to one who is illegally restrained or imprisoned." *Id.* at 68. Nevertheless, in the child custody realm, "the courts generally, and this court rather tardily, have modified and enlarged the scope and original purpose of the writ" to treat it "as invoking the broad and highly equitable powers of the court, to the end that the paramount and ultimate consideration of the court is the best interests and welfare of the infants and minor children brought before it." *Id.* at 69.

In any event, the circumstances of *Helton* were remarkably different from the circumstances of this case. *Helton* stemmed from a custody dispute across state lines between parents after the mother moved with the children from Missouri to Iowa without the knowledge or consent of the children's father or the Missouri court. *Id.* at 63. Months prior to the move, the Missouri court had "decreed that it would be for the best interests of the children that their permanent custody, care, and control be granted to the father" and "provided that the children should not be taken from Missouri without express permission of the court." *Id.* Consequently, the father filed a petition for the writ of habeas corpus alleging "the illegal restraint of the children, and praying that the writ should direct the officer serving it to bring the children and the defendant before the court for a hearing" that would award him custody of the children. *Id.* In rejecting the father's request, we explained that the Missouri decree was limited

to the facts "on which the decree was based" and had "no binding force on the Iowa courts as to facts and conditions which arose thereafter, and were in existence when the trial court rendered its decree." *Id.* at 78. We subsequently affirmed the Iowa district court's decision that it was in the best interests of the children to give their mother custody. *Id.* at 79.

Not only is *Helton* factually distinguishable, but it is also legally distinguishable now that more than seventy years have passed since we decided it. Importantly, in 1982, the legislature enacted Iowa Code section 598.41 to govern child custody proceedings. *See* 1982 Acts ch. 1250, § 2 (codified at Iowa Code § 598.41 (1983)); *see also In re Marriage of Engler,* 532 N.W.2d 747, 750 (Iowa 1995) (explaining that our prior holding that the court entering a dissolution decree has the exclusive jurisdiction to modify it is no longer valid because the legislature enacted a statute allowing the parties to seek modification in other district courts). Under this statute,

> The court, insofar as is reasonable and in the best interest of the child, shall order the custody award, including liberal visitation rights where appropriate, which will assure the child the opportunity for the maximum continuing physical and emotional contact with both parents after the parents have separated or dissolved the marriage, and which will encourage parents to share the rights and responsibilities of raising the child unless direct physical harm or significant emotional harm to the child, other children, or a parent is likely to result from such contact with one parent.

Iowa Code § 598.41(1)(*a*).

It also enumerates factors that the district court must evaluate "[i]n considering what custody arrangement" is in the best interest of the child when parents do not agree to joint custody. *Id.* § 598.41(3); *see id.* § 598.41(3)(*a*)–(*k*) (enumerating factors). We now have an entire statutory scheme governing dissolution proceedings and child custody disputes stemming from them. *See generally* Iowa Code ch. 598 (regarding the dissolution of marriages and issues

relating to domestic relations). "Divorce under Iowa law is strictly statutory," *Bitner v. Bitner*, 176 N.W.2d 162, 164 (Iowa 1970), and the district court's discretion in child custody proceedings is limited to considering the circumstances set forth in Iowa Code section 598.41. Beyond the initial custody decree, where the court is allowed to make decisions in the child's best interest, the Iowa statutory scheme places parental decisions with the parents, not the court. This decree was entered nearly ten years ago, and short of a petition to modify the decree to award one of the parent's sole legal custody, the court lacks authority to do anything else.

Additionally, we cannot say the parents' decree explicitly reserved the district court's authority for future review to modify the decree absent proof of a change in circumstances. At best, the decree only hints at using court proceedings to resolve conflicts, stating:

> In the event of a dispute that cannot be resolved involving the child(ren)'s education, religious instruction, medical treatment and extra-curricular activities, the parties shall initiate the scheduling of a counseling/mediation session with a qualified counselor/mediator in an attempt to resolve the dispute. The unaffected parent shall cooperate in the scheduling of the session and shall be available within two weeks of the request or as soon thereafter as the counselor/mediator has an opening. *Neither party shall initiate any legal action regarding the above issues, without first attempting to resolve the issue through a counselor/mediator.*

(Emphasis added.)

Although the dissent does not acknowledge it, it is well established that our legal system discourages "the retention of jurisdiction to modify divorce decrees without a showing of change of circumstances." *In re Marriage of Schlenker*, 300 N.W.2d 164, 165 (Iowa 1981); *see also In re Marriage of Vandergaast*, 573 N.W.2d 601, 602 (Iowa Ct. App. 1997) (en banc). "Only when the decree unequivocally provides for later trial court review without the necessity of showing a change of circumstances will we say this was the trial

court's intent." *Schlenker*, 300 N.W.2d at 166. The language in this decree is not unequivocal. Perhaps the parents intended "any legal action" to be a modification proceeding? Or maybe a contempt action? Regardless, the language in the parents' decree did not explicitly reserve the district court's jurisdiction in this case.

Therefore, the decree is final, and legal custody remains as determined in the district court's original decree unless and until modification occurs pursuant to statutory authority. A parent seeking modification must prove by a preponderance of the evidence that the circumstances have so materially and substantially changed since the decree was entered that the requested modification is in the children's best interests. *Makela*, 987 N.W.2d at 469. Frankly, that the parents have seemingly been unable to resolve their dispute over vaccinating the children against COVID-19 despite exhausting resources over what has now been years of litigation may very well suggest that the circumstances have changed such that joint legal custody is no longer appropriate.[1] *See, e.g., In re Marriage of Rolek*, 555 N.W.2d 675, 677 (Iowa 1996)

---

[1]The time and resources spent litigating this one issue also speak to the dissent's claim that we are perpetuating an "access-to-justice problem in Iowa" by requiring embattled joint legal custodians to file a petition to modify the custodial agreement to invoke the court's authority over an impasse. According to the dissent, this means that "the district court's docket gets more congested, litigation costs increase, attorney's fees increase, delay lengthens, the stakes get higher, the rancor escalates, and access to justice is limited." But the same can be said for joint custodians who would resort to the legal system to resolve any parenting dispute, ranging from whether the child should play football to whether the child can dye their hair pink. In this emotionally charged area of the law, the dissent's approach benefits the parent with greater time and the resources to hire an attorney and use the court system to resolve every disagreement. *See, e.g., Kilgrow v. Kilgrow*, 107 So. 2d 885, 889 (Ala. 1958) ("It would be anomalous to hold that a court of equity may sit in constant supervision over a household and see that either parent's will and determination in the upbringing of a child is obeyed, even though the parents' dispute might involve what is best for the child. Every difference of opinion between parents concerning their child's upbringing necessarily involves the question of the child's best interest."); *Griffin v. Griffin*, 699 P.2d 407, 410 (Colo. 1985) (en banc) ("Resort to the courts, like forced negotiations between parents, is likely to foster and magnify parental discord to the detriment of the child."); *Guertin v. Guertin*, 870 A.2d 1011, 1013–14 (R.I. 2005) (per curiam) (noting that the trial court "remarked that the parties have become 'attuned to using the [c]ourt system as a third parent,' and that '[e]ffectively, this Family Court is the triage team of [the

("When, following a dissolution decree providing joint custody, the actions of the parties indicate that they are no longer able to cooperate, a modification of the custody status is appropriate."). However, we cannot decide that at this juncture. Even if we considered Mary's filing as a petition for modification, she affirmatively declares in her brief that she "does not wish to remove or alter Shannon's status as joint legal custodian" and reiterated this again at oral argument, dooming any petition at the outset.

We also reject Mary's claim that parents seeking court intervention in their disputes have historically filed applications for determination to do so. None of the cases she cites involved a challenge to the use of an application for determination to institute those proceedings. *See, e.g., In re Marriage of Jacobs*, No. 16–2005, 2017 WL 5185435, at *1 (Iowa Ct. App. Nov. 8, 2017) (noting that a father once filed an application for determination of postsecondary education to modify his child support obligation to a postsecondary education subsidy four years prior to the instant action); *In re Marriage of Bieber*, No. 10–1273, 2011 WL 1136273, at *1 (Iowa Ct. App. Mar. 30, 2011) ("Adam filed an 'application for determination of school district.' The district court treated the application as a request to modify the joint physical care arrangement."); *In re Marriage of Beal*, No. 05–0636, 2006 WL 1279054, at *1 (Iowa Ct. App. May 10, 2006) (documenting the parties' contentious history involving many court filings, including two applications for determination).

Mary's reliance on *Harder v. Anderson*, 764 N.W.2d 534 (Iowa 2009), is equally unpersuasive because that case involved a noncustodial parent with joint legal custody of the children suing a licensed social worker for access to the

---

parties], as opposed to medical professionals" because "[a]fter they were divorced, . . . the parties continued to engage in a pattern of accusations and counteraccusations repeatedly denigrating each other's parenting abilities," resulting in significant amount of court and stage agency time spent addressing the parties' numerous issues with each other (first and second alteration in original)).

children's medical records. *Id.* at 536. It had nothing to do with resolving a dispute between parents who have joint legal custody. *See Galvin v. Citizens' Bank of Pleasantville*, 250 N.W. 729, 730 (Iowa 1933) ("The binding force of a decision is coextensive with the facts upon which it is founded . . . ." (quoting *Perfection Tire & Rubber Co. v. Kellogg-Mackay Equip. Co.*, 187 N.W. 32, 35 (Iowa 1922))). We even acknowledged in *Harder* that "joint legal custody" under Iowa Code section 598.1(3) provides parents "the right to equally participate in decisions affecting a child's medical care." 764 N.W.2d at 538. In affirming the district court's denial of the parent's request, we held that "when a mental health provider claims the release of such information is not in the child's best interest, the court must determine whether the records should be released [by] applying the best-interest-of-the-child test." *Id.*

In our discussion leading to this holding, we noted that parents' legal access to their children's medical records under Iowa Code section 598.41(1)(*e*) "does not give either parent an absolute right to those records" because the children's best interests "always prevail." *Id.* As an example, we proclaimed, "[A] divorced parent with legal custody does not have the absolute right to direct a child's medical care." *Id.* We also cited a New Jersey case—*Pascale v. Pascale*, 660 A.2d 485, 494 (N.J. 1995)—for the following proposition: "When joint legal custodians have a genuine disagreement concerning a course of treatment affecting a child's medical care, the court must step in as an objective arbiter, and decide the dispute by considering what is in the best interest of the child." *Harder*, 764 N.W.2d at 538.

Not only is this language dicta, but it also misconstrues what the New Jersey Supreme Court said in *Pascale*. *Pascale* involved a child support dispute between divorced parents with joint legal custody that examined whether the parents' custody arrangement was "nontraditional" for child support purposes

and whether the parent acting as the children's primary caretaker retained authority over the disbursal of both parents' child support. 660 A.2d at 487–88. In holding the parents had a traditional custody arrangement, the New Jersey Supreme Court remarked,

> Divorced parents remain fully responsible for their children, regardless of the custody arrangement that they choose or the court orders. *When divorced parents are unable to agree on the proper care and level of financial support for their children, courts must step in and act as an objective arbiter, always with the best interests of the children in mind.* That is what the trial court did. Because the Pascales' combined income exceeds $52,000, the trial court based the final child-support figures on its consideration of the factors set forth in N.J.S.A. 2A:34–23—the same factors a court should refer to in determining child support in a nontraditional custody arrangement—as well as the governing Child Support Guidelines of Rule 5:6A.

*Id.* at 494 (emphasis added). This ruling was completely unrelated to any dispute between joint legal custodians over their children's medical care as it only involved financial issues.

Ultimately, the cases Mary cites as examples of the district court acting as a tiebreaker are distinguishable because those issues were properly before the district court on either a trial of the initial dissolution action or an action to modify their decree. The same goes for many of the cases the dissent cites to support its claim that "Iowa courts have repeatedly exercised the authority, even before *Harder*, to interpret, apply, and enforce decrees to resolve impasses between joint legal custodians regarding the care of their minor children without requiring either parent to first file a petition for modification." For instance, while the dissent is correct that the court of appeals remanded the case to the district court to determine which school would be in the child's best interest in *In re Marriage of Flick*, No. 20–1535, 2021 WL 2453111, at *5–6 (Iowa Ct. App. June 16, 2021), that dispute over school choice was properly before the district court as part of the mother's petition for modification in which the mother requested

various changes to the decree. *Id.* at *1. Likewise, the parents' disagreement over removing the child from daycare in *In re Marriage of Bakk,* No. 12–1936, 2013 5962991, at *2 (Iowa Ct. App. Nov. 6, 2013), was properly before the district court as part of the parents' dissolution proceedings, which included the issue of child custody. *Id.* So, too, was the parents' dispute over which school their daughter should attend in *Gaswint v. Robinson,* No. 12–2149, 2013 WL 4504879, at *1 (Iowa Ct. App. Aug. 21, 2013), as that case involved never-married parents seeking to establish a formal custody arrangement upon the father's filing of a petition to establish custody, child support, and medical support. *Id.*

Similarly, *In re Marriage of Comstock,* No. 20–1205, 2021 WL 1016601 (Iowa Ct. App. Mar. 17, 2021), arose from the mother's decision to enroll her children in private school over the father's objection while the mother's petition for modification was already pending. *Id.* at *2. That decision prompted the father to file a motion for determination regarding the school choice, which resulted in the district court ruling that the mother, as the parent with primary physical care of the children, held the tiebreaker in the dispute. *Id.* The court of appeals reversed this decision and remanded to the district court for a determination as to which school was in the children's best interests. *Id.* But it did so with the following caveat:

> The present appeal, however, involves what we believe to be a temporary order, issued following the filing of a petition for modification. A final hearing on the petition for modification has not yet been held. Therefore, we do not engage in a full discussion of the issue at this time but reverse the decision of the district court and remand for the court to make a determination as to whether the children's attendance at Waukee School District or St. Francis of Assisi School is in their best interests.

*Id.* (footnote omitted). The court of appeals also included a footnote informing the parties that they "may wish to consider filing a joint stipulated request for

expedited issuance of procedendo" if they wished to proceed with the modification hearing scheduled later that month, indicating the school issue was one of many to be heard at the modification hearing. *Id.* at *2 n.5.

And as we already noted above, *In re Marriage of Jacobs* and *In re Marriage of Beal* did not involve any challenge to the use of an application for determination to institute those proceedings. *See Jacobs*, 2017 WL 5185435, at *1–2; *Beal*, 2006 WL 1279054, at *1. Plus, nothing in *Beal* indicates how the district court ruled on those applications. *See Beal*, 2006 WL 1279054, at *1–2. The appeal in that case stemmed from a petition for modification, which we reiterate was the proper course of action for Mary to invoke the district court's authority here. *Id.* at *1. That's also the course that the parents took *in In re Marriage of Laird*, No. 11–1434, 2012 WL 1449625, at *2 (Iowa Ct. App. Apr. 25, 2012), when both parents filed petitions for modification after they disagreed about changing their daughter's school district. *Id.*

Notably, various courts in other states have been able to resolve disputes between joint legal custodians over vaccinating their children against COVID-19 by bifurcating certain decisions to give one parent sole authority over the COVID-19 vaccination decision while allowing the parents to remain joint legal custodians on all other important decisions involving the children. *See, e.g.*, *A.R. v. J.A.*, No. CK14–01551, 2022 WL 11121330, at *3 (Del. Fam. Ct. Sept. 14, 2022) ("The Court finds it is in the best interest of the child for Mother to have authority over decisions related to COVID-19 and any vaccination designed for the disease and its variants."); *Jones v. Jones*, No. 1–22–1369, 2023 WL 2625862, at *10 (Ill. App. Ct. Mar. 24, 2023) ("[T]he court's decision that granted Emily sole decision-making authority only with respect to the COVID-19 vaccination is not against the manifest weight of the evidence."); *Kelley v. Kelley*, 535 P.3d 1147, 1150, 1153–54 (Nev. 2023) (en banc) (affirming the district

court's decision to award the father "sole legal custody to act singularly to obtain the COVID vaccine" for his child over the mother's objections despite their status as joint legal custodians because the father's preferred course of action was in the child's best interest); *B.S. v. A.S.*, 160 N.Y.S.3d 802, 815 (Sup. Ct. 2021) ("[T]he immediate question presented is whether it is appropriate for the Court to continue joint custody on the limited issue of COVID health care or whether the Court must carve out a sphere of influence on this limited issue.").[2] A number

---

[2]The laws governing child custody in these states differ from our statutory scheme by allowing the courts to unbundle legal custodial rights. For example, section 602.5 of the Illinois Marriage and Dissolution of Marriage Act governs the "[a]llocation of parental responsibilities: decision-making" and authorizes the court to "allocate decision-making responsibilities according to the child's best interests." 750 Ill. Comp. Stat. 5/602.5(a) (2023). Unless the parents otherwise agree in writing on the decision-making allocation, the statute also clarifies, "The court shall allocate to one or both of the parents the significant decision-making responsibility for each significant issue affecting the child." *Id.* at § 5/602.5(b).

Similarly, New York courts have routinely awarded parents "shared legal custody of the child with each party having final authority over separate decision-making zones." *Jonathan R. v. Meredith S.*, 105 N.Y.S.3d 396, 397 (Sup. Ct. 2019); *see also Elizabeth S. v. Edgard N.*, 56 N.Y.S.3d 51, 52 (Sup. Ct. 2017) (affirming the family court's award of joint legal custody to the parents that gave the mother final decision-making authority in the area of education); *Tatum v. Simmons*, 21 N.Y.S.3d 208, 209 (Sup. Ct. 2015) ("The court properly awarded the parties' shared legal custody of the child with each party having final authority over separate decision-making zones."); *White v. White*, 898 N.Y.S.2d 8, 8–9 (Sup. Ct. 2010) (upholding joint custody in which the mother had final decision-making on health-related issues, extracurricular activities, and education through eighth grade and the father had final decision-making on education after eighth grade and religion). Nevada courts, too, are clear that parents with joint legal custody "need not have equal decision-making power in a joint legal custody situation," and joint legal custodians who "reach an impasse and are unable to agree on a decision . . . may appear before the court . . . to have the court decide what is in the best interest of the child" under the factors set forth in Nevada Revised Statute 125C.0045(1)(*a*). *Rivero v. Rivero*, 216 P.3d 213, 221–22 (Nev. 2009) (en banc), *overruled on other grounds by Romano v. Romano*, 501 P.3d 980, 983 (Nev. 2022) (en banc); *see also Kelley*, 535 P.3d at 1151. Delaware courts also employ a best-interest analysis to decide a dispute between joint legal custodians over an important decision affecting the child, applying the statutory factors laid out in Delaware Code section 722(*a*)(1)–(8). *See e.g.*, *A.R. v. J.A.*, No. CK14–01551, 2022 WL 11121330, at *2–3 (Del. Fam. Ct. Sept. 14, 2022) (examining the statutory factors in awarding the mother authority over decisions related to COVID-19 and any vaccination for it). Notably, while the COVID-19 vaccine was at issue in *A.R. v. J.A.*, that case differs from this case because it came before the court upon a petition to modify custody. *Id.* at *1–2. Cases in Minnesota have also come out similarly. *See, e.g.*, *Wolf v. Oestrich*, 956 N.W.2d 248, 257 (Minn. Ct. App. 2021) ("Because the parties here have joint legal custody, and because the district court neither adopted an agreement between the parties nor filed its own order modifying the rights and responsibilities established by the award of joint legal

of these states and many others also have statutes expressly addressing how courts should resolve disputes between joint legal custodians over important decisions affecting their children. *See, e.g.,* 750 Ill. Comp. Stat. 5/602.5(a) (2023); Mich. Comp. Laws. § 722.25(1) (2023) ("If a child custody dispute is between the parents, . . . the best interests of the child control."). Iowa is not one of them.

Nor does Iowa's statutory definition of "joint legal custody" allow district courts to unbundle legal custodial rights to carve out a limited right for one parent to be the sole decision-maker over the children's COVID-19 vaccinations while maintaining joint legal custody. *See Makela,* 987 N.W.2d at 471; *see also In re Marriage of Sokol,* 985 N.W.2d 177, 182 (Iowa 2023) (declining to disturb the court of appeals decision that granting one parent final decision-making authority was inconsistent with joint legal custody). "For us to interpret the statute to achieve some policy objective found nowhere in the statute's language . . . invades a sphere reserved for the legislature." *Tripp v. Scott Emergency Commc'n Ctr.,* 977 N.W.2d 459, 467–68 (Iowa 2022). "Our task is to interpret the statute, not improve it." *Id.* at 468 (quoting *Brakke v. Iowa Dep't of Nat. Res.,* 897 N.W.2d 522, 541 (Iowa 2017)).

On a final note, the dissent's claim that its position "is in accord with the 'universal decisions' of other courts" is misleading as the dissent's string cite of cases from other states tends to cherry-pick the favorable portions while ignoring other parts or cases from the same state that support this court's position. This includes its reliance on *Morgan v. Morgan,* 964 So. 2d 24 (Ala. Civ. App. 2007), which the dissent cites for its finding "that a trial court with jurisdiction over a custody matter has inherent authority to decide a dispute between parents with

---

custody, the district court did not err by determining that father may not unilaterally decide where child attends school.").

joint custody as to the education of the child, using the best-interests standard." *Id.* at 31. Unlike Iowa, Alabama has specific statutes that allow the trial court to implement a plan governing important childcare matters when the parents cannot agree and to give one parent sole power over major decisions concerning the child. *See* Ala. Code, §§ 30–3–151(2), 153(b). These statutes were enacted after the Alabama Supreme Court held, "We do not think a court of equity should undertake to settle a dispute between parents as to what is best for their minor child *when there is no question concerning the child's custody.*" *Kilgrow v. Kilgrow,* 107 So. 2d 885, 889 (Ala. 1958) (emphasis added). Anyway, the dispute over school choice in *Morgan* was considered as part of the bigger petition to modify custody, which is what we are stating is required of the parties in this case to invoke the district court's authority. *See* 964 So. 2d at 27.

The dissent is correct that the Kentucky Court of Appeals stated the following in 2009:

> If, as in the instant case, the parties to a joint custody agreement are unable to agree on a major issue concerning their child's upbringing, the trial court, with its continuing jurisdiction over custody matters, must conduct a hearing to evaluate the circumstances and resolve the issue according to the child's best interest.

*Young v. Holmes,* 295 S.W.3d 144, 146 (Ky. Ct. App. 2009) (quoting *Burchell v. Burchell,* 684 S.W.2d 296, 299–300 (Ky. Ct. App. 1984)). But Kentucky does not have a statutory definition of "joint legal custody" governing its decision, let alone one like Iowa's that does not allow the district court to unbundle legal custodian rights to give one parent more rights than the other while maintaining joint legal custody. *See Makela,* 987 N.W.2d at 471 (explaining that Iowa's statutory definition of "joint legal custody" does not allow for the parceling of rights); *see also* Iowa Code § 598.1(3). Instead, Kentucky courts are allowed to grant one parent greater decision-making authority than the other, even under a joint

custody arrangement. *Gonzalez v. Dooley*, 614 S.W.3d 515, 521 (Ky. Ct. App. 2020). Our legislature has not given us the same authority.

Statutory law also distinguishes this case from the Louisiana case that the dissent quotes for the following: "While a court is justifiably hesitant to involve itself in the details of parental decisions, . . . it is the trial court's responsibility to [e]nsure that the best interest of the child is served." *Harden v. McCorvey*, No. 09–434, 2009 WL 3636865, at *2 (La. Ct. App. Nov. 4, 2009). Contrary to Iowa law, Louisiana requires the trial court to designate a domiciliary parent in most joint custody decrees with whom the child shall primarily reside. La. Stat. Ann. § 335(B)(1)–(2). "And [t]he domiciliary parent shall have authority to make all decisions affecting the child unless an implementation order provides otherwise." *Id.* § 335(B)(3). Nevertheless, the statute mandates: "All major decisions made by the domiciliary parent concerning the child shall be subject to review by the court upon motion of the other parent. It shall be presumed that all major decisions made by the domiciliary parent are in the best interest of the child." *Id.* Thus, Louisiana law requires the court to review any major decision that the domiciliary parent makes upon motion of the other parent. There is no parallel to this in the Iowa Code.

Likewise, the dissent's reliance on the Arizona Court of Appeals decision in *Jordan v. Rea*, 212 P.3d 919, 927 (Ariz. Ct. App. 2009), overlooks statutory differences between Arizona and Iowa. In Arizona, state law requires parents with joint legal custody to submit a plan to the court regarding educational decisions for the child. *Id.* If the parents disagree over any element of this plan, a statute specifically requires the court to resolve the disagreement by determining that element itself, and a dispute over that plan is what was before the court in *Jordan. Id.*

As the Arizona court clarified, it was "*based on this clear statutory directive*" that it had "no difficulty in concluding that when post-decree disputes arise under the specific terms of a parenting plan included as part of a joint custody order, a best-interests standard should be applied." *Id.* (emphasis added). We do not have the same clear statutory directive in Iowa. Without the same clear statutory directive in Iowa, the dissent attempts to flex judicial muscle to circumvent legislation clearly addressing the procedure. Consequently, the dissent offers a generous reading of this opinion in citing it to support the claim that

> [o]n the relevant question presented in this appeal, every court in America has reached the same conclusion: it is a firmly established principle that at all times, at all levels, and in all forums, courts have inherent equitable authority to resolve an impasse between joint custodians according to the best interest of the child *without requiring a parent to file a petition to modify the custodial provisions of the decree.*

(Emphasis added.)

To be clear, we agree with the dissent and other jurisdictions that courts should apply a best-interest standard to resolve disputes between joint legal custodians over important issues affecting the child. The issue on appeal is not what standard we should apply to resolve disputes between joint legal custodians, and the dissent attempts to put the cart before the horse in claiming otherwise. Instead, the issue on appeal is whether the court has the authority to resolve those disputes in the first place. *See, e.g., Wallace v. Wildensee*, 990 N.W.2d 637, 645 (Iowa 2023) ("If a district court lacks authority to issue a judgment, decree, or order, it cannot act, even if both parties are in agreement.").

We cannot express the problems with the dissent's approach any better than the Missouri Court of Appeals did almost sixty years ago when it stated,

> The protection of the child's welfare has indeed been the object of the courts in custody cases from earliest times; but the attainment

of that object requires the observance of principles considerably more practical and less nebulous than a mere declaration of beneficent purpose. Long experience with wardships has taught the courts that in this field (as in most others) a prudent regard for their own limitations is essential to the orderly discharge of their duties. Courts are not so constituted as to be able to regulate the details of a child's upbringing. *It exhausts the imagination* to speculate on the difficulties to which they would subject themselves were they to enter the home or the school or the playground and undertake to exercise on all occasions the authority which one party or the other would be bound to ascribe to them. Considerations of the most practical kind, therefore, dictate that in these cases the duty of attending to the details of the child's rearing be delegated to a custodian . . . .

*Jenks v. Jenks*, 385 S.W.2d 370, 377 (Mo. Ct. App. 1964) (emphasis added). Other jurisdictions have expressed similar sentiments. *See, e.g., Griffin v. Griffin*, 699 P.2d 407, 410 (Colo. 1985) (en banc) ("[T]he court is not in a position to enforce this agreement by substituting its choice of schools for that of the parents. The court, a stranger to both child and parents, is ill-equipped to understand and act upon the needs of the child."); *Lamb v. Wenning*, 591 N.E.2d 1031, 1034 (Ind. Ct. App. 1992) ("The courts are simply the wrong tool for the job [of raising children]. Our divorce courts must not serve as 'referee parents' within joint custodial relationships. . . . If a joint legal custody arrangement fails, it should be modified to a sole legal custody arrangement.").

In conclusion, the district court said it best: "[U]nless and until the present Decree's language providing for joint legal custody is changed after a trial, the Court is without authority to step into this dispute." *See Wallace*, 990 N.W.2d at 645. Because Mary did not file a petition to modify this language, the district court did not have the authority to resolve the parties' conflict over vaccinating their children against COVID-19. Therefore, we affirm the district court's dismissal of Mary's application.

**III. Conclusion.**

For these reasons, we affirm the district court's judgment and vacate the decision of the court of appeals.

**DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT AFFIRMED.**

Mansfield, Oxley, and McDermott, JJ., join this opinion. McDonald, J., files a dissenting opinion, in which May, J., joins. Waterman, J., takes no part.

**MCDONALD, Justice (dissenting).**

The court takes an unduly narrow view of the power of the district court (and by extension, this court) to act in the best interests of children in this state. The district court is a court of general jurisdiction. It has constitutional and statutory authority to sit as a court in equity. As a court in equity, the district court "has inherent power and jurisdiction in all proceedings involving the custody and care of minor children." *Schott v. Schott*, 744 N.W.2d 85, 88 (Iowa 2008). The district court's constitutional, statutory, and equitable authority over all proceedings involving the care of minor children includes the authority to interpret, enforce, and apply a decree to resolve disputes between joint legal custodians regarding the care of minor children without requiring a parent to petition to modify their joint custodial rights. This is the law in Iowa and in most other states that have considered the issue. Rather than adhering to Iowa's precedents and following the persuasive precedents, the majority overrules our precedents and rejects the persuasive precedents. The court's rationale for doing so is unclear. In some parts of the court's opinion, the majority seems to indicate that the district court does not have inherent authority to resolve an impasse between joint custodians. In other parts of the court's opinion, the majority seems to indicate that the district court does have inherent authority to resolve an impasse between joint custodians but only when allowed by statute. This latter argument is a self-contradiction: Inherent authority to act only when allowed by statute is, by definition, not inherent authority. Whatever the rationale, the court's opinion is contrary to controlling and persuasive precedents and contrary to the interests of the families the court is supposed to serve. I respectfully dissent.

I.

To the extent the majority concludes the district court (and this court) does not have inherent equitable authority to interpret, apply, and enforce a dissolution decree to resolve an impasse between joint legal custodians without the necessity of a party filing a petition to modify the dissolution decree, the majority errs.

By constitution and statute, the district court sits in equity in family law matters. The Iowa constitution provides that the "district court shall be a court of law and equity." Iowa Const. art. V, § 6. The district court has "all the power usually possessed and exercised by trial courts of general jurisdiction," including equitable powers. Iowa Code § 602.6101 (2022). The Code specifically provides that family law proceedings shall be in equity. *See* Iowa Code § 598.3 (providing that "[a]n action for dissolution of marriage shall be by equitable proceedings"); *id.* § 600B.7 (providing that actions involving custody and care of children born out of wedlock shall be based "on principles of law and equity").

As a court sitting in equity, the district court has the inherent authority and duty to act in the best interests of children subject to its jurisdiction. *See Schott*, 744 N.W.2d at 88 ("A court of equity has inherent power and jurisdiction in all proceedings involving the custody and care of minor children."); *Addy v. Addy*, 36 N.W.2d 352, 356 (Iowa 1949) ("It is firmly established that equity has inherent power to protect the rights of minors."), *overruled on other grounds by Brown v. Brown*, 269 N.W.2d 819, 821 (Iowa 1978) (en banc). The district court's authority arises, in part, out of the government's general duty to act as *parens patriae. See In Int. of Welcher*, 243 N.W.2d 841, 843–44 (Iowa 1976) ("It is the duty of the State, as parens patriae, to see that every child within its borders receives proper care and treatment."); *Cath. Charities of Archdiocese of Dubuque v. Zalesky*, 232 N.W.2d 539, 545 (Iowa 1975) (en banc) ("Surely the

sovereign, as parens patriae, has a legitimate socio-humanitarian interest in every child within its boundaries."). This power is universally recognized. *See Helton v. Crawley*, 41 N.W.2d 60, 71 (Iowa 1950) (stating it is "the substantially universal decisions of the courts, that a court of equity has inherent power and jurisdiction in all proceedings involving the custody of minor children"). And this power is incredibly broad. *See In re Marriage of Gallagher*, 539 N.W.2d 479, 481 (Iowa 1995) (en banc) ("Courts of equity may exercise broad powers in applying equitable principles.").

The district court's universally recognized authority to act in the best interests of children subject to its jurisdiction gives the district court authority to interpret, apply, and enforce its decree to resolve disputes between joint legal custodians regarding the care of minor children without either parent having to first file a petition to modify the parent's joint custodial relationship. This is well-established Iowa law. In *Harder v. Anderson, Arnold, Dickey, Jensen, Gullickson & Sanger, L.L.P.*, this court stated that "when joint legal custodians have a genuine disagreement concerning a course of treatment affecting a child's medical care, the court must step in as an objective arbiter, and decide the dispute by considering what is in the best interest of the child." 764 N.W.2d 534, 538 (Iowa 2009). The majority correctly notes this statement in *Harder* was dictum, but the dictum was a correct statement of Iowa law.

Iowa courts have repeatedly exercised the authority, even before *Harder*, to interpret, apply, and enforce decrees to resolve impasses between joint legal custodians regarding the care of their minor children without requiring either parent to first file a petition for modification. *See, e.g., In re Marriage of Flick*, No. 20–1535, 2021 WL 2453111, at *5–6 (Iowa Ct. App. June 16, 2021) (remanding to the district court to determine which school would be in the best interest of the child); *In re Marriage of Comstock*, No. 20–1205, 2021

WL 1016601, at *2 (Iowa Ct. App. Mar. 17, 2021) (remanding to the district court to determine which school was in the best interests of the children); *In re Marriage of Jacobs*, No. 16–2005, 2017 WL 5185435, at *1 (Iowa Ct. App. Nov. 8, 2017) (noting that an application for determination was used to determine postsecondary education); *In re Marriage of Bakk*, No. 12–1936, 2013 WL 5962991, at *2 (Iowa Ct. App. Nov. 6, 2013) (stepping in as arbiter to determine the child's daycare situation); *Gaswint v. Robinson*, No. 12–2149, 2013 WL 4504879, at *5 (Iowa Ct. App. Aug. 21, 2013) (affirming a district court order resolving dispute regarding school choice); *In re Marriage of Laird*, No. 11–1434, 2012 WL 1449625, at *2 (Iowa Ct. App. Apr. 25, 2012) (determining which school was in the best interest of the child); *In re M.R.R.*, No. 10–1996, 2011 WL 4378037, at *7 (Iowa Ct. App. Sep. 21, 2011) (stating that "[i]f issues as to the type of treatment this child should have continue to exist between the parents who have joint custody, those issues should be addressed in the district court in the context of the dissolution decree"); *In re Marriage of Beal*, No. 05–0636, 2006 WL 1279054, at *1 (Iowa Ct. App. May 10, 2006) (noting that the parents had filed applications for determination twice before); *In re Name Change of Quirk*, 504 N.W.2d 879, 882 (Iowa 1993) (en banc) (Carter, J., concurring) (stating that the court had "general equity powers" to resolve a dispute over the child's name and stating that "it is not necessary nor legally appropriate for this court to suggest that this issue be settled by filing a modification petition").

Iowa law is in accord with the "universal decisions" of other courts. *Helton*, 41 N.W.2d at 71. Other states have concluded that courts have inherent equitable power to interpret, apply, and enforce a decree to resolve an impasse between joint legal custodians regarding the care of their minor children according to the best interest of the child without the necessity of a parent filing a petition for modification. *See, e.g., Morgan v. Morgan*, 964 So. 2d 24, 31 (Ala.

Civ. App. 2007) (finding that "a trial court with jurisdiction over a custody matter has inherent authority to decide a dispute between parents with joint custody as to the education of the child, using the best-interests standard"); *Tamari v. Turko-Tamari*, 599 So. 2d 680, 681 (Fla. Dist. Ct. App. 1992) (per curiam) ("It is true that the parties have reached an impasse as to which elementary school the child should presently attend in Israel, and that, accordingly, it was necessary for the trial court to decide, based on the best interests of the child, which party's decision on the issue should prevail. It was unnecessary, however, to turn over to the wife all future educational decisions affecting the child, especially if the wife should ever return to the United States with the child."); *Yordy v. Osterman*, 149 P.3d 874, 875–76 (Kan. Ct. App. 2007) ("In the all-too-common event of a dispute on such a fundamental issue between parents who are subject to the court's ongoing jurisdiction during the minority of their child, it is the job of the courts to resolve the dispute in a manner that is in the best interests of the child."); *Young v. Holmes*, 295 S.W.3d 144, 146 (Ky. Ct. App. 2009) ("If, as in the instant case, the parties to a joint custody agreement are unable to agree on a major issue concerning their child's upbringing, the trial court, with its continuing jurisdiction over custody matters, must conduct a hearing to evaluate the circumstances and resolve the issue according to the child's best interest." (quoting *Burchell v. Burchell*, 684 S.W.2d 296, 299–300 (Ky. Ct. App. 1984))); *Harden v. McCorvey*, No. 09–434, 2009 WL 3636865, at *2 (La. Ct. App. Nov. 4, 2009) ("While a court is justifiably hesitant to involve itself in the details of parental decisions, . . . it is the trial court's responsibility to insure that the best interest of the child is served."); *Nieber v. Nieber*, No. A20–0616, 2021 WL 1525184, at *1 (Minn. Ct. App. Apr. 19, 2021) ("Father wants the children to be vaccinated. Mother does not. Where joint legal custodians disagree on specific issues of custodial care, the court "shall consider the best interests" of the

children. The law makes no distinction between general determinations of custody and resolution of specific issues of custodial care." (citation omitted) (quoting *Novak v. Novak*, 446 N.W.2d 422, 424 (Minn. Ct. App. 1989))) *Novak*, 446 N.W.2d at 424 (stating that a disagreement between joint custodial parents "must be resolved according to the best interests of the child"); *Kelley v. Kelley*, 535 P.3d 1147, 1154 (Nev. 2023) (en banc) ("When parents with court-ordered joint legal custody of a minor child disagree on medical decisions regarding that child, the district court breaks the tie by determining which course of action is in the best interest of the child."); *Arcella v. Arcella*, 407 P.3d 341, 344 (Nev. 2017) (en banc) ("When parents in a joint legal custody situation disagree as to a child's education, they 'may appear before the court on an equal footing to have the court decide what is in the best interest of the child.' " (quoting *Rivero v. Rivero*, 216 P.3d 213, 221–22 (Nev. 2009) (en banc), *overruled on other grounds by Romano v. Romano*, 501 P.3d 980 (Nev. 2022) (en banc))); *In re Kurowski*, 20 A.3d 306, 315 (N.H. 2011) (resolving a school placement issue under the best-interests standard without first considering whether the circumstances permitted modification); *Scott v. Scott*, No. A–0506–22, 2023 WL 3141061, at *2 (N.J. Super. Ct. App. Div. Apr. 28, 2023) (per curiam) (resolving vaccination dispute and stating that "[w]hen the child's best interests are stymied by the inability of parents to compromise, the court is obligated to step in, essentially serving as a tiebreaker"); *C. Madison v. W. Davis*, 101 A.3d 1132, 1142–43 (N.J. Super. Ct. Ch. Div. 2014) (explaining that "where two divorced parties who cannot get along are at loggerheads . . . , the court must act under parens patriae jurisdiction, and will break the tie"); *J.F. v D.F.*, 160 N.Y.S.3d 551, 551 (Sup. Ct. 2021) (stating that "[w]hen joint custodial parents can't agree on the best interests of their child, a court is thrown into the middle, that uncomfortable— but ultimately necessary—position of making an important decision for someone

else's child" and ordering COVID-19 vaccination); *Rogowski v. Kirven*, 291 A.3d 50, 59 (Pa. Super. Ct. 2023) ("It is inherent within the concept of shared legal custody that a parent is required to seek the trial court's intervention when an impasse emerges."); *S.W.D. v. S.A.R.*, 96 A.3d 396, 403–04 (Pa. Super. Ct. 2014) (holding that the trial court properly decided a dispute between parents having joint custody); *Nagel v. Nagel*, 292 A.3d 1198, 1202–03 (R.I. 2023) ("However, when both parents are at an impasse, including times when neither acts unreasonably, their recourse is to return to the Family Court, which has an obligation to decide and resolve the stalemate by considering the best interests of the children."); *Ralston v. Henley*, No. M2001–02274–COA–R9–CV, 2001 WL 1158952, at *2 (Tenn. Ct. App. Oct. 2, 2001) ("When parents with joint custody cannot agree upon a major decision regarding their child's education, the trial court[] must break the tie.").

As the Arizona Court of Appeals explained in *Jordan v. Rea*, a court's resolution of a dispute regarding the care of a child is "consistent with 'the firmly established principle that at all levels, at all times and in all forums, the welfare and best interest of the child is of prime and overriding importance.' " 212 P.3d 919, 928 (Ariz. Ct. App. 2009) (quoting *Funk v. Ossman*, 724 P.2d 1247, 1250 (Az. Ct. App. 1986)). A "court must consider whether [a parent's decision] is in the best interests of the children" when joint custodians are at loggerheads. *Id.* at 929.

The majority attempts to distinguish some of these persuasive precedents by explaining that, unlike Iowa, some jurisdictions statutorily allow courts to divide the parents' legal custodial rights by issue or statutorily allow courts to serve as a tiebreaker when the parents are at an impasse. The distinctions are immaterial. The statutory authority of a court in another state to divide custodial rights does not deny or even address the district court's equitable authority to

resolve an impasse between joint custodians where custodial rights are not divided. Likewise, the fact that some jurisdictions explicitly created an impasse procedure does not deny or even address the question of the district court's equitable authority to act in the absence of such a statute. On the relevant question presented in this appeal, the persuasive precedents show that at all times, at all levels, and in all forums, courts have inherent equitable authority to resolve an impasse between divorced joint custodians according to the best interest of the child without requiring a parent to file a petition to modify the custodial provisions of the decree. *See Jordan*, 212 P.3d at 928.

## II.

To the extent the majority opinion concludes that the district court does have the inherent authority to resolve an impasse between joint custodians without the necessity of a party filing a petition for modification but that the district court's inherent authority is not authorized by statute or has been precluded by statute, the majority "proceeds upon a wrong principle, built upon a false premise, and arrives at an erroneous conclusion." *Stuart v. Pilgrim*, 74 N.W.2d 212, 216 (Iowa 1956).

"It is fundamental to our system of government that the authority for courts to act is conferred by the constitution or by statute." *In re Marriage of Thatcher*, 864 N.W.2d 533, 546–47 (Iowa 2015) (Zager, J., concurring) (quoting *State v. Hoegh*, 632 N.W.2d 885, 888 (Iowa 2001)). "Yet, it is equally fundamental that . . . courts also possess broad powers to do whatever is reasonably necessary to discharge their traditional responsibilities. This type of judicial authority is known as inherent power." *Id.* (quoting *Hoegh*, 632 N.W.2d at 888). Under controlling law, statutes will not be interpreted to "abrogate an inherent power of the court absent clear legislative intent." *Hoegh*, 632 N.W.2d at 889. In particular, "the grant of statutory power to provide for the custody and care of

children in connection with a divorce decree does not abrogate the equitable powers of the court existing independent thereof." *Wardle v. Wardle*, 464 P.2d 854, 856 (Wyo. 1970).

For example, in *In re Marriage of Debler*, the husband challenged a mandatory wage assignment for alimony contained within a decree. 459 N.W.2d 267, 269–70 (Iowa 1990). He argued that because the Code specifically permitted wage assignments for child support but was silent on wage assignments for alimony, the wage assignment for alimony was impliedly prohibited. *See id.* at 270. We rejected that argument in short order: "Although this statute makes no mention of alimony, we fail to see how this is fatal to the district court's inherent equitable power to order a comparable wage assignment in case of delinquent alimony." *Id.* The same rationale applies here. Where the Code does not specifically disallow an exercise of inherent authority, the district court may act under its general powers. "That no statute prohibits such an action as this is sufficient answer to the argument there is no specific statutory authorization for it." *Addy*, 36 N.W.2d at 356.

There is no clear expression of legislative intent in chapter 598 that abrogates the district court's equitable power to interpret, apply, and enforce a decree to resolve a dispute between joint custodians on application in accord with the best interest of the child. There is nothing in chapter 598 that even addresses an application for determination to resolve disputes between joint legal custodians. The majority's reliance on *In re Marriage of Engler*, 532 N.W.2d 747 (Iowa 1995), is thus misplaced. In *In re Adoption of Ellis*, this court held the decretal court had exclusive jurisdiction to modify a decree. 149 N.W.2d 804, 808 (Iowa 1967). In *Engler*, the mother filed a petition for modification in a county other than the decretal county. 532 N.W.2d at 748. We concluded that *Ellis* had been abrogated by a change to the Code that specifically permitted a petition to

be filed in a county other than the decretal county. *Id.* at 750. Unlike *Engler*, there is no provision in chapter 598 that specifically prohibits the district court from considering an application for determination. That should be the end of the statutory analysis. In the absence of an express prohibition of the district court's constitutional and equitable authority, the district court retains such authority.

It appears the majority recognizes the legislature has not expressly prohibited the district court from exercising its inherent authority to resolve the impasse between these joint custodians, so the majority turns to an implied-conflict argument. As a general matter, the majority's implied-conflict approach is contrary to our caselaw. *See Hoegh*, 632 N.W.2d at 889–90; *Debler*, 459 N.W.2d at 270; *Addy*, 36 N.W.2d at 356. Even if the majority's implied-conflict approach were not contrary to controlling precedents, the majority fails to identify any implied conflict.

The majority first explains that the district court has no authority to act here because Iowa Rule of Civil Procedure 1.301(1) requires a litigant to file a petition to commence a new action. This misses the point. The whole point of Mary's application is that she is not commencing a new action. She does not seek to modify the parties' joint custodial rights. Instead, she requests that the district court interpret, apply, and enforce the joint-legal-custody provision in the existing decree to determine what is in the best interests of the parties' children. "In cases involving the custody of minor children," it does not matter whether a party invokes the court's power "by divorce or separation proceeding, by habeas corpus, petition to the chancellor, or other equitable proceeding." *Helton*, 41 N.W.2d at 70. "[T]he trial court's . . . broad, equitable powers in determining what will be best for the future welfare of the children should be unhampered by narrow technical rules." *McKay v. Ruffcorn*, 73 N.W.2d 78, 81 (Iowa 1955) (quoting *Mitchell v. Davis*, 205 S.W.2d 812, 814 (Tex. Civ. App.

1947)); *see also Ney v. Ney*, 891 N.W.2d 446, 450–51 (Iowa 2017) ("A court exercising equitable jurisdiction generally has the power to identify the relevant equities and fashion an appropriate remedy.").

To the extent the majority means that joint custodians at an impasse can seek relief from the district court only by filing a petition for modification, then the majority opinion is denying the district court's inherent authority to act on application or motion, which, as discussed above, is contrary to our existing caselaw. *See Harder*, 764 N.W.2d at 538; *Flick*, 2021 WL 2453111, at *5–6; *Comstock*, 2021 WL 1016601, at *2; *Jacobs*, 2017 WL 5185435, at *1; *Bakk*, 2013 WL 5962991, at *2; *Gaswint*, 2013 WL 4504879, at *5; *Laird*, 2012 WL 1449625, at *2; *M.R.R.*, 2011 WL 4378037, at *7; *Beal*, 2006 WL 1279054, at *1. In addition to these authorities, the majority's apparent rationale—that a party can invoke the district court's authority only by filing a petition for modification— was explicitly considered and rejected in two recent decisions.

The first case was *In re Marriage of Morris*, 810 N.W.2d 880 (Iowa 2012). In that case, the parties divorced in 2003. *Id.* at 882. In 2010, the wife filed "an application" to determine her entitlement to her former spouse's retirement benefits. *Id.* at 884. In her application, she asked the court to "exercise its equitable power" to effectuate a provision in the decree. *Id.* Like the majority today, the district court denied the application, concluding that it did not have the authority to provide relief. *Id.* This court unanimously reversed the judgment of the district court, concluding the district court "short-circuited the matter by characterizing Kathy's claim as a 'modification.'" *Id.* at 886. We reasoned the district court had the authority to resolve an application because "the district court retains authority to interpret and enforce its prior decree." *Id.*

In the second case, *In re Marriage of Shipley*, the parties were divorced in 2013. No. 15–1418, 2016 WL 757416, at *1 (Iowa Ct. App. Feb. 24, 2016). Several

years later, the husband filed an "application" to determine his post-secondary education contribution. *Id.* The district court treated the application as a petition to modify the decree, requiring the husband to show a substantial change in circumstances. *Id.* at *2. The court of appeals held this was error because the "district court retains authority to interpret and enforce its prior decree." *Id.*

The majority next argues that Mary's application for determination is disallowed because the district court's resolution of the parties' impasse would conflict with the parties' rights and responsibilities as joint legal custodians. I fail to see any conflict. The Code provides that "[r]ights and responsibilities of joint legal custody include but are not limited to *equal participation* in decisions affecting the child's legal status, medical care, education, extracurricular activities, and religious instruction." Iowa Code § 598.1(3) (emphasis added). When a party invokes the district court's authority to interpret, apply, and enforce the decree to resolve an impasse between joint legal custodians, both parents still equally participate in the decision-making process by presenting evidence and argument to the district court. The district court's involvement does not "diminish," as the majority puts it, either parent's right or responsibility to equally participate in decisions affecting their children.

The majority's contention that the district court's involvement uniquely "diminishes" the parties' rights and responsibilities is incorrect for an additional reason. When parents are faced with a binary choice for their children—for example, whether the children should be vaccinated or whether the children should attend school "A" or school "B"—one parent's decision will always prevail over the other. The only question presented in this situation is whether the final decision should be made by one parent exercising a status-quo veto without any determination of what is in the best interests of the children or whether the decision should be made by a court based on evidence of what is in the best

interests of the children. There is no other option. Having a court interpret, apply, and enforce the decree to determine what is in the best interests of the children no more diminishes one parent's rights to equal participation in decision-making than allowing one parent to trump the other by exercising a status-quo veto. Just consider the majority's position in this case. The majority argues that Mary's asking for the district court's authorization to vaccinate the children over Shannon's objection "diminish[es] . . . Shannon's right to equal participation in a decision affecting the children's medical care." If the majority's rationale were correct, I am not sure why Shannon's refusal to authorize vaccination of the children does not equally diminish Mary's right to equal participation in a decision affecting the children's medical care. *See In re Marriage of Rigdon*, No. 19–1497, 2020 WL 7868234, at *2 (Iowa Ct. App. Dec. 16, 2020) (Ahlers, J., specially concurring) ("I can think of no other scenario in which two parties with equal voting rights are at loggerheads where we would permit one of those parties to declare himself or herself the winner as if that party had won the vote."); *see also Anderson v. Anderson*, 56 S.W.3d 5, 8 (Tenn. Ct. App. 1999) ("We agree that given the joint custody posture, it was appropriate to ask the divorce court to intercede and, in effect, to 'break the tie.' If Mother has the unilateral right, as she claims, to make the decision of home schooling vis-a-vis public schooling, Father is thereby relegated to a powerless position and joint custody is rendered meaningless."). The majority has no response to this.

Setting all these particulars aside, in the end, the majority's construction of the Code to foreclose Mary's attempt to obtain relief is at odds with the Code itself. The Code provides that "[i]ts provisions and all proceedings under it shall be liberally construed with a view to promote its objects and assist the parties in obtaining justice." Iowa Code § 4.2. Chapter 598 specifically provides that "[a]n action for dissolution of marriage shall be by equitable proceedings." *Id.* § 598.3.

Chapter 600B, governing proceedings involving children born out of wedlock, provides that such proceedings shall be based "on principles of law and equity." *Id.* § 600B.7. The district court's equitable powers include the power to interpret, apply, and enforce its decrees on application to determine what is in the best interests of the children under the terms of a decree. Indeed, the Code imposes a statutory obligation on the district court to act "in the best interest of the child." *Id.* §§ 598.41(1)(*a*), (2)(*b*), (2)(*d*), (3), (5)(*a*), (6), (7); *see Gallagher*, 539 N.W.2d at 481 (stating "the best interest of the child is the dominating consideration in all child custody disputes"); *Finken v. Porter*, 72 N.W.2d 445, 446 (Iowa 1955) ("In cases of [child custody] the primary concern of courts is the welfare and best interests of the child."). Rather than construing the Code to assist the parties in obtaining justice and protecting the best interests of the children, the majority builds the Code into a rampart to defend the courthouse from the very persons we are equitably and statutorily obligated to serve.

## III.

The court's decision to defend rather than open the courthouse is not without real consequence to the families in this state. There is an access-to-justice problem in Iowa. Litigation and lawyers are expensive. This court has access to statewide filing information. The most current data shows that seventy percent of dissolution cases in Iowa involve one pro se party, and thirty-three percent of cases involve two pro se parties.

Under our existing law, when joint legal custodians were at an impasse, they could file an application for determination or other similar motion, come to court, equally participate in the decision-making process by presenting evidence and argument to the district court, and obtain a determination of what is in the best interests of their children. Because of the limited nature of the issue presented, the parents might not have needed legal representation to effectively

represent themselves. And even if they did obtain legal representation, the costs and fees would be limited due to the limited nature of the issue.

But no more. After today, when joint legal custodians are at an impasse, one party must now file a petition to modify the legal custody rights of the parents even if the party does not want to modify the legal custody rights of the parents. This new requirement triggers a filing fee, mandatory discovery, mandatory classes, and mandatory mediation. In addition, because Iowa law does not allow the division of custodial rights on a per-issue basis, each party is now at risk of losing his or her custodial rights on all issues even though the parents disagree about only one discrete issue. Under the majority's new rule, now that the stakes are higher, the parties are incented to hire lawyers (if they can afford one), conduct discovery, and escalate their attacks on each other to prove a substantial change in circumstances and an ability to minister more effectively to the needs of the children. *In re Marriage of Frederici*, 338 N.W.2d 156, 158 (Iowa 1983).

In short, under the majority's new rule, the district court's docket gets more congested, litigation costs balloon, attorney fees increase, delay lengthens, the stakes get higher, the rancor escalates, and access to justice is limited. Who are the winners here?

## IV.

While it is hard to identify any winners from today's ruling, the losers are easily identifiable: stare decisis, the courts, parents, and their children. What is inexplicable to me is why there need be any losers. The court's decision today is contrary to the Iowa Constitution, contrary to the Code, contrary to our own precedents, contrary to the precedents of courts throughout America, contrary to the welfare of families in this state, and contrary to this court's own policy of improving access to justice. I respectfully dissent.

May, J., joins this dissent.